CHIEF JUSTICE WHEAT
delivered the ofinion of the court:
Morgan was the superintendent and owner of the Kentucky Military Institute. Slaughter, who was an infant under twenty - one years of age, entered and matriculated as a cadet at said institute, agreeably to what appears to have been the rules ol the school.
Slaughter advanced money to Morgan for tuition, board, &c., was taken sick, and left the institute. A short time thereafter the father of Slaughter called on Morgan, settled his account against the cadet, and received Morgan’s check on a bank for $55 90, the balance of Slaughter’s advance, as shown by Morgan’s account. In this settlement Slaughter was charged for one year’s tuition, when, as he insists, he was only chargeable with tuition for six weeks. After this Slaughter returned to the institute, advanced fifty dollars more to Morgan, was soon taken .sick again, and left the institution.
Slaughter claiming that Morgan had illegally, and in violation of his own rules, charged $70 for one year’s tuition in advance, when he was only entitled to $35 by those rules, sued Morgan to recover $80, which he claimed Morgan illegally retained out of the first and second advancements made by Slaughter. ,. .
*29 „ Morgan answered Slaughter’s petition, controverting his right to recover any part of the $70, on the alleged ground that, by the rules of the institute, which Slaughter, by writing, bound himself to conform to, Morgan was not to refund any part of the advance made for tuition, in case the cadet should leave the institution before the expiration of the term of one year, for which he entered on the book kept by the institution.
Morgan, in his answer, admitted that a balance of $25 was due to Slaughter out of the second advancement, but insisted that, as Slaughter had not been discharged agreeably to the rules, that he was not bound to refund it, but was willing that Slaughter should return to school and derive the benefit of it in board, &c.
He also states, that he permitted Slaughter to enter the institute the second time under the first advance made for tuition, which Morgan had retained.
A trial was had of the action in the circuit court, and the jury found a verdict for Morgan under a peremptory instruction from the court '‘that Slaughter could not maintain the action, and that it should be in the name of his father. ”
Slaughter filed grounds and moved for a new trial; his motion was overruled; he filed his bill of exceptions, prayed an appeal, and has brought the case to this court for revision. Slaughter claimed, on the motion for a new trial, his right to have it, because the verdict was contrary to the evidence, and that the instruction given to the jury was erroneous.
On the trial, each party gave in evidence a printed copy of the rules of the institute. By Slaughter’s copy the advance for the cadet’s tuition was fixed at $35; by Morgan’s copy, it was fixed at $70. On account of this'conflict in the testimony, the court had no right to take the case from the jury, provided Slaughter had a right to maintain the action. That he had a right to maintain the action, we have no doubt.
There is nothing in the record from which it appears that the money deposited with and advanced to Morgan was not the money of the appellant. The presumptions arising from the facts evidenced by the record, all tend to show that the money was appellant’s. The money was advanced by him, and Mor *30 gan receipted to him for it; and when he receipted for the $55 90 handed to Slaughter’s father, the receipt acknowledged that the money was the balance due on the cadet’s account.
That an infant can bind himself for necessary and suitable instruction we have no doubt; but we are not prepared to admit that an infant can by his contract incur a penalty or forfeiture to an individual enforceable against the infant by the person contracting for a forfeiture.
It is laid down by Lord Coke, “ that an infant may bind himself to pay for his necessary meat, drink, apparel, necessary physic, and such other necessaries, and likewise for his good teaching and instruction, whereby he may profit himself after-wards ; but if he bind himself in an obligation, or other writing, with a penalty for the payment of any of these, that obligation shall not bind him. ” (Law Library, 315; Macpherson on Infants, 498; Coke Littleton, 172, a; Parsons on Contracts, 243, and sequel.) “ An infant may contract for the use and occupation of necessary lodgings, and he will be liable on assumpsit for a reasonable rent, though not on his covenant in a lease to pay a fixed rent.” (Law Library, 317; Macpherson on Infants, 501.) Whilst we fully admit the power of an infant to bind himself by his contract “ for his good teaching and instruction, whereby he may profit himself afterwards,” we deny that he can by his contract bind himself to pay a penalty or incur a forfeiture. The infant is only liable for what he actually received. In this case Morgan claims the right to enforce a penalty, or a forfeiture in the nature of a penalty, against the appellant. We think he has no such right under our laws, although the infant may have agreed to come under Morgan’s rules, and although it may be very useful to have such rules, to aid in the enforcement of discipline at schools. The public good does not make it necessary that such rules should be enforced at the expense of taking from infants the protection which the laws have thrown around them. If teachers would have such rules enforced to aid in discipline, they must contract with parents and guardians, who have the right to make and bind themselves by such contracts as Morgan sets up against Slaughter. We think the circuit court erred in giving the *31 instruction to the jury which was given in this case, and we also think that a new trial ought to have been awarded to Slaughter.
Wherefore the judgment of the court below is reversed, and the cause remanded, with directions to award to appellant a new trial without the payment of costs, and for further proceedings not inconsistent with the principles of this opinion.