SAVIN HILL YACHT CLUB ASSOCIATION *vs.* SAVIN HILL YACHT CLUB.

Suffolk. March 19, 1923. — June 22, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Corporation*, Social club, Dissolution. *Savin Hill Yacht Club Association. Savin Hill Yacht Club.*

The circumstances surrounding the organization in 1913 of the corporation, Savin Hill Yacht Club Association, and the issuance of shares of its stock to the "regular" members of the corporation, Savin Hill Yacht Club, which had no capital stock, were *held* to warrant a finding that those thus constituted stockholders of the Association gave consideration for the stock they thus received by surrendering the rights to the property of the Club, which were theirs as "regular" members of the Club, the Club's property being conveyed by the Club to the Association and they taking the shares of the Association in place of their rights so surrendered.

The circumstances of the conveyance by the Savin Hill Yacht Club of its property to the Savin Hill Yacht Club Association upon its organization, and the agreement by the Association to lease to the Club for twenty years the real estate and other things then used by the Club for yachting purposes at a specified rental with a provision for the immediate determination of the lease in case of the taking by public authority by right of eminent domain of the leased land or any part of it and that in that event all damages should belong to the Association, were *held* not to impress the property with a trust in favor of the Club, nor to show any contract on the part of the Association to furnish the Club with grounds and building.

In the circumstances and under the provisions of the agreement and lease above described, after the property thus leased by the Savin Hill Yacht Club Association to the Savin Hill Yacht Club had been taken by eminent do-

main and the Association had received the damages awarded therefor, an interlocutory decree, entered on a petition by the majority in number and interest of the members of the Association, adjudging that the petitioners were entitled to a dissolution and appointing a receiver to wind up its affairs, was *held* to have been warranted.

PETITION, filed in the Superior Court under R. L. c. 109, § 52, as amended (see now G. L. c. 155, § 50), by a majority in number and interest of the shareholders of Savin Hill Yacht Club Association, a Massachusetts corporation incorporated on March 28, 1913, " for the purpose of providing and maintaining grounds and buildings for the accommodation of the Savin Hill Yacht Club and for such other recreative or social purposes as may be deemed expedient."

The prayer of the petition was "that said Savin Hill Yacht Club Association be dissolved and its property disposed of as the court may order."

The petition was opposed and an answer was filed by the corporation, Savin Hill Yacht Club.

In the Superior Court, there was an agreed statement of facts. The petition was heard by *Sanderson,* J. Material facts and findings and rulings by the judge are described in the opinion. By order of the judge an interlocutory decree was entered (1) " that the petitioner is entitled to dissolution as prayed for in its petition, and that it is hereby dissolved; " (2) appointing a " receiver to take charge of the estate and effects of the petitioner, and to collect the debts and property due and belonging to it; with power to prosecute and defend suits in its name or otherwise; to appoint agents under him, and to do all other acts which might be done by it, if in being, which may be necessary for the final settlement of its unfinished business; the aforesaid powers of said receiver to continue until otherwise ordered by the court; " (3) especially authorizing and empowering such receiver " to sell at public or private sale all real and personal property belonging to the petitioner, and to make, execute and deliver in pursuance of this decree and in the name of the petitioner by himself as receiver any deeds and bills of sale that may be necessary to pass the legal title to said property to the purchaser or purchasers thereof. The purchase price of

said property shall thereupon become in the hands of said receiver a part of the estate and effects of the petitioner."

Being of opinion that questions of law raised by the respondent and in the interlocutory decree so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by this court, the judge reported the cause, at the request of the respondent and with the consent of the petitioners, to this court upon the pleadings, the agreed statement of facts, the respondent's requests for rulings of law, the judge's report of findings and rulings, the respondent's exceptions, and the interlocutory decree for a determination of all questions of law raised by the record, such decree to be entered as justice and equity might require.

*F. D. Putnam*, (*W. Hoag* with him,) for the petitioner.

*M. J. Mulkern*, for the respondent.

DeCourcy, J. This is a petition by a Massachusetts corporation for dissolution and the distribution of its assets. The petition was opposed by the Savin Hill Yacht Club, another Massachusetts corporation, hereinafter referred to as the Yacht Club. The judge of the Superior Court who heard the case without a jury, denied certain requests for rulings presented by the Yacht Club, made some findings of fact and rulings of law, and entered an interlocutory decree dissolving the petitioner and appointing a receiver.

The material facts, as agreed upon or found by the judge, are as follows: There existed from 1875 to 1888 an unincorporated association known as Savin Hill Beach Association. In 1888 the Savin Hill Yacht Club was incorporated, without capital stock, "for the purpose of encouraging yachting and maintaining a place for social meetings." It numbered among its members practically all the members of the old Beach Association, succeeded to its assets, leased certain land, and built thereon a yacht clubhouse. On July 17, 1906, the Yacht Club bought some land, beach and flats at Savin Hill, known as Fox Point, and moved its clubhouse and equipment thereto. At that time the membership was of two classes: active, who were entitled to all privileges; and limited, whose initiation fees and

dues were smaller, and who had no ownership in the boats or right to vote. The Club was financed by dues, money borrowed on mortgages and notes, and receipts from entertainments.

At a meeting of the Yacht Club on March 9, 1908, the constitution was altered, so as to create five classes of members, i. e. regular, associate, limited, honorary and non-resident. The amended constitution also provided that " regular " members should be limited to the then " active " members, and that the number thereof should be reduced to and permanently remain at one hundred; that regular members on ceasing to be such would forfeit all interest in the property; that associate members should have the privileges of regular members, " except that they shall have no ownership in the property of the Club, and no right to vote at its business meetings, or to hold office, or to take any part in the management of the affairs of the Club; " and that limited members should be entitled to all the privileges of associate members except boat ownership and locker rights. There were then about one hundred and eighty-four active members, who were thereafter retained on the records as regular members. On April 10, 1913, this number had been reduced by death and otherwise to one hundred and fourteen, — constituting the entire regular membership.

At the annual meeting of the Yacht Club on October 10, 1912, a report was made by the executive committee, which had been considering how associate members might properly be taken in as regular members. " In view of the sole ownership of the property being in the Regular members," the committee recommended that a new corporation be organized, with a capital stock of $12,000; that the property be conveyed to it, the debts of the Yacht Club assumed by it, and the new corporation lease the property to the Club; and that the latter's constitution and by-laws be then repealed and new by-laws adopted. The report of the executive committee was adopted, and the Yacht Club, by a vote of thirty-eight to three passed the following vote: " The Executive Committee is hereby authorized to cause to be

organized a new corporation substantially as recommended
in their report, to be known as the Savin Hill Yacht Club
Association. When such corporation shall have been or-
ganized and one share of its stock given or offered to each
regular member of this Club, any remaining shares remain-
ing in its treasury, the Executive Committee is authorized to
convey it to [*sic*] the real and personal property of the Club
excepting cash deposited in bank and in the hands of the
treasurer, choses in action, supplies kept by the Club for
sale to its members, and record and account books, the
Association to assume and agree to pay the first and second
mortgage notes and other promissory notes of the Club
amounting to $10,980 in all. But simultaneously with said
conveyance the Association as Lessor and the Club as Lessee
shall execute a lease for twenty years from and after January
1, 1913, of that part of the real estate now occupied by the
Club and all the floats, furniture, tools and other things
now used by the Club for its yachting and social purposes.
Said lease shall provide that the lessee shall keep all and
several the buildings in repair and insured against fire and
shall also keep in repair or replace the articles of personal
property so that it shall turn over to the Association at the
end of the term of the lease an inventory of personal prop-
erty similar and equal to that received by it under the lease.
The lessee shall pay water rates, taxes, assume all liability
to others and pay in addition a rental of $1,400 a year.
The lease shall provide for its immediate termination in case
of the taking by public authority by right of eminent domain
of the leased land or any part of it, so that all damages in
such case shall belong to the Association."

In accordance with that vote the petitioner was incor-
porated on March 28, 1913: a certificate for one share of the
capital stock was delivered to each regular member of the
Club, and a deed of Fox Point, covering also certain personal
property, was executed and delivered to the petitioner. As
found by the judge, " One of the purposes for which the
Association was incorporated was to preserve the ownership
of the property in the original regular members of the Club
by making them the sole stockholders in the new corporation.

Another purpose was to enable the Club thereafter to take in associate members as regular members.   A third purpose was that the new corporation should provide and maintain the grounds and buildings deeded to it for the accommodation of the Savin Hill Yacht Club, and to carry out this last purpose it was agreed that the Association should lease to the Club for 20 years the real estate and other things then used by the Club for Yachting purposes at a specified rental with the provision for the immediate determination of the lease in case of the taking by public authority by right of eminent domain of the leased land or any part of it, and that in that event all damages shall belong to the association." A lease, as provided for in the vote of October 10, 1912, was read to and authorized by the executive committee of the Yacht Club, and was duly authorized by the Association.

The trial judge further found: " The two corporations acted under this arrangement from April 9, 1913, to December 23, 1914, when the whole of the real estate leased by the Association to the Club was taken by the Metropolitan Park Commission by eminent domain.   In 1917 the park commission took in the same way the remaining real estate of the Association.   The Association has collected the damages for said taking.   This provision as to damages was inserted in recognition of the fact that the assets belonged to the original regular members.   The Yacht Club has continued to occupy a part of the real estate formerly hired from the Association by an arrangement with the Metropolitan Park Commission now paying an annual rental of $750."

The rulings of law requested by the respondent were based substantially on three contentions: (1) that the petitioner's stockholders paid no consideration for their shares; (2) that the petitioner and its shareholders took the property impressed with a trust for the benefit of the respondent; (3) that there was a contract whereby the petitioner agreed to furnish suitable grounds and buildings for the Yacht Club.

1. The first contention is disposed of by the finding and ruling of the judge that " the original regular members of the Club gave consideration for the stock of the Association, which they received by the surrender of their rights as regular

members of the Club (which had no capital stock), in the property of the Club which was conveyed by the Club to the Association, taking shares of stock in the Association instead." So far as this was a finding of fact, it was fully warranted by the facts above set forth. At the time of the deed to the petitioner the property was really owned by the regular members of the Club, the title standing in the name of the corporation.

2. As the property conveyed did not belong to the respondent, but only to the regular members, no trust resulted in the respondent's favor. On this record we think that the judge was right in his finding and ruling that "neither the property of the Savin Hill Yacht Club Association nor the shares of stock are impressed with a trust in favor of the Savin Hill Yacht Club." As a finding of fact this inference was warranted. Apparently it was the intention of the Club to preserve the beneficial ownership of the property in the regular members for their own benefit through the ownership of the stock of the new corporation. And the Club itself assented to this arrangement, and accepted a lease which negatived the existence of any trust.

3. As the judge further found, "no contract to furnish the Club with grounds and buildings exists." One of the main reasons for incorporating the plaintiff association was to permit the Yacht Club to increase its regular membership by taking in associate members, without diminishing the ownership rights of the original regular members. The petitioner was willing to have the Yacht Club with its enlarged membership use the property, on payment of rent and taxes, until it should be taken by eminent domain. This arrangement was planned and authorized by the Club even before the petitioner was incorporated. And the lease, voluntarily executed by the respondent, expressly provided that it should terminate in the event of a taking of the property, and that in such case all damages should belong to the Association.

There was no error in the court's rulings or refusals to rule: and the interlocutory decree must be affirmed.

*Ordered accordingly.*