HARVARD TRUST COMPANY, trustee, *vs.* CITY OF CAMBRIDGE.

Middlesex.    December 9, 13, 1929. — February 25, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Damages,* For property taken or damaged under statutory authority.
*Landlord and Tenant,* Construction of lease, Taking by eminent
domain. *Practice, Civil,* Charge to jury, Exceptions, New trial, Ver-
dict. *Evidence,* Relevancy and materiality; Opinion: expert. *Wit-
ness,* Expert, Cross-examination. *Contract,* Construction, In writing.

A lease in writing of certain real estate in a city contained a provision:
". . . if the leased premises or any part thereof shall be . . . taken
by action of city or other authorities, so as to be thereby rendered
unfit for use and occupation, then and in such case the rent herein-
before reserved or a just and proportionate part thereof, according to
the nature and extent of the injury sustained, shall be abated until
the premises shall have been duly repaired and restored; or in case
they shall be wholly destroyed, the estate hereby created shall there-
upon be determined."    The city by eminent domain took a portion
of the premises, and the owner brought a petition for assessment of
damages, in which the lessee was permitted to intervene.    At the trial,
subject to an exception by the lessee, he was asked by the lessor,
"Now then, you have not paid any rent at all to the . . . [lessor],
have you, from the time you got out?" and answered, "No."    With-
out objection or exception, the judge charged the jury that the above
quoted provision in the lease did not operate to extinguish, cancel or
terminate the lease.    There were no requests for instructions with
respect to such subject matter.    The jury found that the lessee was
not damaged by the taking.    *Held,* that
    (1) The lease was unambiguous and its construction was for the
judge;
    (2) It was error for the judge to admit the evidence to show con-
duct by the lessee which was an admission that the lease was ter-
minated by the taking;
    (3) As the lessee did not object to the judge's charge nor ask for
any different instruction, he must be taken to have accepted the in-
struction and to have waived any error in the admission of the evi-
dence which was inconsistent with the rule of law as finally given;
and he could not complain that that evidence had a prejudicial effect
notwithstanding the charge.
The lessee above described made a sublease in writing of a part of the
premises, expiring coincidentally with his lease.    At the trial the
lessee's expert had testified to the value of the two leasehold interests
before and after the taking, and on cross-examination was asked by

the counsel for the lessor, "if you are going to give the" sublessee "$11,064.28 for the same space, how is it fair to give the" lessee "$28,361.61 for the very same space," and, subject to an exception by the lessee, was permitted to answer, "The only way I think I can answer that is, that I consider the value of the leasehold by" the lessee "in the amount of $21,380.89; I consider that" the lessee "was damaged to that extent. Now in turn I consider that the" sublease, "that they were damaged to the extent of $11,000. Of course all of this was damage caused by the taking." *Held*, that

(1) The question and answer were relevant to determine the reasons upon which the witness based his opinion as to the value of the two leasehold interests before and after the taking, and the cross-examination was clearly admissible in the sound discretion of the trial judge;

(2) The whole charge in reference to the rights and relations of the lessee and the sublessee, to which no exceptions were saved, cured any possible prejudicial effect which the cross-examination could reasonably have had upon the determination by the jury.

A party cannot as matter of right raise, on a motion to set aside a verdict and grant a new trial, a question of law which might have been raised before verdict; and an exception to the denial of such a motion must be overruled.

There is no support in this Commonwealth for the proposition that the trial judge as matter of law should grant a new trial whenever it is fairly contendable that the verdict was wholly arbitrary in that it is a manifest contradiction of undisputed testimony and admitted facts.

PETITION, filed in the Superior Court on February 23, 1928, for the assessment of damages due to a taking of land by eminent domain by the respondent.

Claims by certain intervening petitioners are described in the opinion. The petition was tried before *Sisk*, J. Material evidence, exceptions saved by the invervening petitioners and the jury's verdicts are described in the opinion. The intervening petitioners alleged exceptions.

*W. P. Murray*, for the intervening petitioners.

*E. A. Counihan, Jr.*, (*M. C. Kelliher* with him,) for the petitioner.

*P. J. Nelligan*, City Solicitor, for the respondent.

PIERCE, J. This is a petition for the assessment of damages arising out of the taking by eminent domain, by the city of Cambridge, of a strip of land some two hundred fifty-four and one half feet in length and fourteen feet in width. The strip taken was a portion of a large parcel of land situated on Broadway, a public highway in the city

of Cambridge, which was owned by the petitioner, a trustee under the will of Leander Greely. At the time of the taking there was located on the property a three-story wooden building (hereinafter called the "Banister building"), a small brick building (hereinafter called the "kiln building"), a three-story brick building (hereinafter called the "Ginsburg building"), a large storage building (hereinafter called the "Moodie building"), and two two-story wooden sheds. In the proceedings the A. W. Banister Co., Ginsburg Brothers and the Quality Paper Box Co., each of whom occupied a portion of the property under certain leases which are referred to in the bill of exceptions, intervened under the provisions of G. L. c. 79, §§ 27, 29. At the trial "it was agreed by all the parties that the date of the taking of the property by the city of Cambridge by eminent domain was April 27, 1927, and that the right to damages arose and were recoverable as of that date."

It was not in dispute that the lease from the petitioner to the Banister company was dated August 23, 1923, and covered substantially twenty-seven thousand five hundred eighty-two square feet of land on which there was erected a three-story wooden building, a brick boiler room, a dry-kiln, and the Moodie building. The term was from September 1, 1923, to September 1, 1933, at a monthly rental of $333.33. The lease contained a provision as follows: "and it is also agreed that if the leased premises or any part thereof shall be damaged by fire or other unavoidable casualties, or be taken by action of city or other authorities, so as to be thereby rendered unfit for use and occupation, then and in such case the rent hereinbefore reserved or a just and proportionate part thereof, according to the nature and extent of the injury sustained, shall be abated until the premises shall have been duly repaired and restored; or in case they shall be wholly destroyed, the estate hereby created shall thereupon be determined."

It was not disputed that the lease from the petitioner to Ginsburg Brothers was dated August 22, 1923, that it covered approximately twenty thousand and nine square feet of land on which stood the Ginsburg building and two

two-story storage sheds, and that it was for a term from September 1, 1923, to September 1, 1933, at a yearly rental of $6,000. This lease contained the same provision with reference to a taking by eminent domain as that contained in the lease to the Banister company, *supra.*

On December 20, 1923, Ginsburg Brothers executed a lease with the Quality Paper Box Co. by the terms of which the two upper floors in the Ginsburg building were sublet for a term of nine years and seven months, expiring on August 31, 1933, at a yearly rental of $4,400, for the first five years of said term, and the sum of $4,500 for the remainder thereof. This lease provided as follows: "and in case of such destruction or damage, or a like destruction or damage by any taking or appropriation by public authorities for public uses, then the lessors, their heirs or assigns, may terminate this lease." "Ginsburg Brothers as lessor have not terminated this lease because of said taking."

It was agreed at the trial that the leases to the A. W. Banister Co. and to Ginsburg Brothers, and the sublease to the Quality Paper Box Co. had six and one third years to run from the date of the taking.

The case was submitted to the jury upon instructions by the judge to which no exceptions were taken. The jury returned a verdict, in effect, that the Harvard Trust Company, trustee, sustained damages as the result of the taking by eminent domain by the city of Cambridge in the sum of $54,453.75, "(estimating the same as an entire estate and as if it were the sole property of one owner in fee simple)"; and that each lessee and sublessee who brought an intervening petition has "not sustained damage" and was "awarded no damages." The findings of the jury were "Returned and affirmed in court" on January 30, 1929.

At the trial the intervening petitioners seasonably saved certain exceptions to questions on cross-examination by counsel of the petitioner; and each intervening petitioner seasonably filed a motion for a new trial upon the ground that the verdict is against the law, the evidence and the great weight of the evidence. The motions were denied.

The case is before this court on the exceptions with respect to the admission and exclusion of evidence, and also to the exceptions taken by each intervenor to the denial of the motions for a new trial.    These exceptions will be considered in the order of their presentment in the brief of the intervenors.

During the trial Samuel L. Ginsburg, one of the Ginsburg Brothers, testified to the value of the partnership leasehold interest in the condemned property and was asked in cross-examination by counsel for the Harvard Trust Company, trustee, "Now then, you have not paid any rent at all to the Harvard Trust Company, have you, from the time you got out?" and subject to the exception of the intervenors was permitted to answer, "No." The intervenors put their objection to the admission of the answer to the question upon the ground that the lease contains no provision for its termination in case of a partial taking; that the payment of rent or the refusal to pay rent after the taking was a question between the Harvard Trust Company and them and had nothing to do with the plaintiff's right to recover the reduction in value of its estate due to the partial taking.    It is plain from the record that the presiding judge when he admitted the question and answer momentarily overlooked the rule that the construction of an unambiguous written instrument is for the judge, and assumed that the conduct of the intervenors after the taking was evidence for the jury upon an issue as to whether their conduct was an admission that the leases were terminated by the taking.    This view of the law was error.    *Munigle* v. *Boston*, 3 Allen, 230.    *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115, 116.

The intervenors, however, suffered no harm, for the reason that the jury were instructed: "The provision in this petitioner's lease that if 'the leased premises or any part thereof shall be taken by the action of the city or other authorities, so as to be thereby rendered unfit for use and occupation, then and in such case the rent hereinbefore reserved, or a just and proportionate part thereof, accord-

ing to the nature and extent of the injury sustained, shall be abated until the premises shall have been duly repaired and restored, or in case they shall be wholly destroyed, the estate hereby created shall thereupon be determined' . . . did not operate to extinguish, cancel, or terminate the petitioner's lease." "Of course you can see that for reasons of its own the Banister company may prefer to hang on to that lease on the remaining property down to the canal to the end of the term." There were no requests for instructions in this respect and no exceptions were taken to the charge. This court in such circumstances is not bound to analyze the charge or point out errors if they exist, which counsel have not seen fit to disagree with or except to. *O'Brien* v. *Shea*, 208 Mass. 528. *Commonwealth* v. *Taschetta*, 252 Mass. 158. Here the charge was consistent with the theory of the law upon which the intervenors placed their objections to the admission of the question and answer. If they had thought after the charge that the jury might remain influenced by the testimony they should have asked the judge for more explicit instructions or have moved to have such testimony stricken from the record, and the jury in unmistakable language directed to disregard it. As they accepted the instruction, it must be assumed they waived any error in the admission of evidence which was inconsistent with the rule of law as finally given, and cannot complain that that evidence had a prejudicial effect notwithstanding the charge.

The second exception was to evidence admitted in the course of the cross-examination of one Gilbert, a real estate expert, called by the intervenors. He had testified to the value of the various leasehold interests before and after the taking, and on cross-examination was asked by the counsel for the trust company: "Now then, if you are going to give the Quality Paper Box Co. $11,064.28 for the same space, how is it fair to give the Ginsburg company $28,361.61 for the very same space?" and subject to the exception of the intervenors was permitted by the presiding judge to answer: "The only way I think I can answer that is, that I consider the value of the leasehold

by Ginsburg in the amount of $21,380.89; I consider that
Ginsburg was damaged to that extent.  Now in turn I con-
sider that the Quality Paper Box Co. lease, that they
were damaged to the extent of $11,000.  Of course all of
this was damage caused by the taking."  As to this ex-
ception the intervenors contend that "the entire examina-
tion was improper, erroneous,. and wholly prejudicial" in
that "it was no part of the province of the witness to de-
termine or to be permitted to state what his view was as
to the way in which the rights of the several lessees should
be adjusted as to each other."  We think the question and
answer were relevant to determine the reasons upon which
the witness based his opinion as to the value of the various
leasehold interests before and after the taking, and that
the cross-examination was clearly admissible in the sound
discretion of the trial judge.  *Jennings* v. *Rooney*, 183
Mass. 577.  Moreover, we are of opinion that the whole
charge in reference to the rights and relations of the lessees
and the sublessees cured any possible prejudicial effect
which the cross-examination could reasonably have had
upon the determination of the jury.  See *Allen* v. *Boston
Elevated Railway*, 212 Mass. 191.

The third exception is argued in the brief of the inter-
venors on the theory that they are entitled to have a new
trial because the verdict on its face is erroneous as matter
of law.  It is contended in support of this position that the
jury went on an hypothesis as to the law governing the case,
which was given them by the judge and which was erroneous.
Assuming the position to be sound, of which we express no
opinion, "a party cannot as matter of right raise a question
of law on a motion to set aside the verdict and grant a new
trial, which might have been raised before verdict.  While
a judge may in his discretion permit such a question to be
presented on a motion for a new trial, he cannot be required
to consider it."  *Lonergan* v. *American Railway Express Co.*
250 Mass. 30, 38.  *Ryan* v. *Hickey*, 240 Mass. 46.  *Common-
wealth* v. *Dascalakis*, 246 Mass. 12, 24.  Manifestly all points
here taken by the intervenors could have been presented
by the intervenors through appropriate requests for instruc-

tions.   There is no support in this Commonwealth for the proposition that the trial judge as matter of law should grant a new trial whenever it is fairly contendable that the verdict was wholly arbitrary, in that it is a manifest contradiction of undisputed testimony and admitted facts.

It results that each of the several exceptions is overruled.

*Exceptions overruled.*