Rose Cogliano & another *vs.* Commonwealth.

Norfolk.   May 10, 1956. — June 27, 1956.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Real or Personal Property.  Eminent Domain,* Nursery stock, Damages.
   *Damages,* Eminent domain.  *Words,* "Trees."

Nursery stock, "planted in the soil in the usual manner of nursery stock,"
   consisting principally of young trees of varying age and height, some
   shrubbery, rose bushes and perennials, was part of the real estate as
   between the owner of the land in which the stock was planted and the
   Commonwealth in a proceeding for the assessment of damages for a
   taking of the land by eminent domain.  [358]
The word "trees" in G.L. (Ter. Ed.) c. 79, §§ 1, 13, is broad enough to
   include planted nursery stock consisting of young trees, shrubbery,
   rose bushes and perennials.  [359]
Under G.L. (Ter. Ed.) c. 79, § 13, the damages to the owner of land from
   a taking of the land by eminent domain by an order which excluded
   nursery stock planted in the land from the taking were the value of the
   land apart from the nursery stock plus the value of the stock before
   the taking so far as it enhanced the value of the land, less the value of
   the stock for purposes of removal whether or not the owner actually
   removed it.  [359-360]

Petition, filed in the Superior Court on May 20, 1955.
The case was reported by *Good,* J.

*Edward O. Proctor,* (*Edward O. Proctor, Jr.,* with him,) for
the petitioners.

*George Fingold,* Attorney General, *Max Rosenblatt &
Charles V. Statuti,* Assistant Attorneys General, for the Com-
monwealth, submitted a brief.

Spalding, J.   This is a petition for the assessment of
damages under G. L. (Ter. Ed.) c. 79, § 14, for a taking of
the petitioners' property.  The case was submitted on a
statement of agreed facts, and the judge, upon the request
of the parties, reported the case without decision for deter-
mination by this court.  G. L. (Ter. Ed.) c. 231, § 111.

The pertinent facts are these.  The petitioners were joint

owners of two parcels of land in Canton, both of which were taken by the Commonwealth. At the time of the taking the petitioners were engaged in the nursery business and maintained a nursery occupying substantially all of the land taken. The nursery stock was "planted in the soil in the usual manner of nursery stock." The stock consisted principally of young trees of varying age and height, some shrubbery, rose bushes and perennials. Before the taking the value of the land apart from the nursery stock, but including a wooden building thereon, was $10,000. "The value of the nursery stock before the taking so far as it enhanced the value of the land, less the value thereof for the purposes of removal, was . . . $40,000. The injury to the nursery stock caused by the taking was . . . $40,000." The parcels in question were taken by the department of public works on behalf of the Commonwealth for a limited access highway under G. L. (Ter. Ed.) c. 79 by an order of taking of April 5, 1955, which included the "trees and structures thereon with the exception of the nursery stock . . . which was not included in the order of taking."

On April 27, 1955, the petitioners were notified by the Commonwealth that they would have thirty days from May 4 in which to vacate the premises as provided in G. L. (Ter. Ed.) c. 79, § 3, as amended. On May 11 the Commonwealth notified the petitioners that they would be given ninety days from May 4 in which to vacate the premises "and to remove their personal property and the nursery stock which was excluded in the order of taking." Pursuant to these notices the petitioner "removed certain items of the nursery stock and sold the same."

The underlying question for decision is whether the nursery stock in question was real estate or personal property. It is the Commonwealth's position that it was the latter and was properly excluded from the taking and that the Commonwealth is not answerable in damages with respect to it.

The nature of nursery stock, that is, whether it is personalty or realty, has not been discussed much in our deci-

sions.   The fullest discussion will be found in *Paine* v
*Assessors of Weston,* 297 Mass. 173, where the question for
decision was whether nursery stock was part of the real
estate for the purposes of taxation, and it was held that it
was.   In an illuminating opinion by Field, J., as he then
was, it was pointed out that growing trees permanently
located on land have always been treated as part of the
freehold until severed therefrom, though by a contract of
sale of such trees they pass to the purchaser as personalty
when severed.   This, it was said, was the ordinary rule
applicable to things growing on land, though for some pur-
poses " 'growing crops, which owe their annual existence
to the cultivation of man, are treated as chattels even while
still annexed to the soil' " (page 175).   Continuing the
court said, "Nursery stock, such as is here in question, re-
sembles in some respects growing trees permanently located,
and in other respects growing annual cultivated crops.   Like
such crops nursery stock is cultivated and is not intended
to remain permanently on the land.   The fact that it is
transplanted from time to time is some indication that its
location is temporary.   Such nursery stock, however, is not
an annual product of the soil and in character and appear-
ance it is like growing trees in their early stages" (page
176).

In support of its contention that the nursery stock in
question is personalty the Commonwealth cites *Miller* v.
*Baker,* 1 Met. 27, and *Whitmarsh* v. *Walker,* 1 Met. 313,
but neither case is authority for that proposition.   In *Miller*
v. *Baker,* the plaintiff by a bill of sale acquired the interest
of one Senior, a lessee of the land, in certain nursery stock
planted therein by Senior.   A sheriff attached the property
in an action against Senior, and the plaintiff brought an
action of trespass de bonis asportatis against the sheriff.
The question for decision was whether damages for taking
and converting trees, shrubs, and plants rooted in the soil
of a nursery garden, for the purpose of being taken up and
sent to market in the spring and autumn of each year,
could be recovered in this form of action.   It was held that

the action could be maintained.  In its opinion the court
referred to a statement in *Lee* v. *Risdon,* 7 Taunt. 188, 191,
to the effect that "trees in a nursery ground are a part of
the freehold until severed," and said, "And no doubt this
is true as between the heir and executor, and would be so
also where the entire property in the land and in the trees
growing thereon is united in the same person.  But we appre-
hend, in a case like the present, where the owner of the
trees had no permanent interest in the soil, but was, at
most, using it for the mere purpose of nourishing and sus-
taining his trees until the proper period should arrive for
their removal, the interest in the trees may be considered
as separated from the realty, and they may well be denomi-
nated personal chattels, and for the wrongful taking and
conversion of them by a stranger, the owner may maintain
an action of trespass de bonis asportatis" (page 33).

In its discussion of this case in *Paine* v. *Assessors of
Weston,* the court said, "It is evident from this case that
nursery stock growing on land — like growing trees gen-
erally — is a part of the real estate when there is no separa-
tion of interests, and that such nursery stock is treated as
personal property before severance only because of a con-
structive severance resulting from agreement, express or im-
plied, between the parties."  297 Mass. 173, 176–177.  The
other case relied on by the Commonwealth (*Whitmarsh* v.
*Walker,* 1 Met. 313) is not authority for its contention that
nursery stock is personalty.  All that was there decided was
that an oral agreement for the sale of mulberry trees grow-
ing in a nursery to be delivered on the ground where they
were growing, upon payment of the purchase price, was not
a contract for the sale of an interest in or concerning lands
within the statute of frauds.

From the foregoing it is apparent that, in the absence of
special circumstances such as a constructive severance re-
sulting from agreement express or implied, nursery stock is
treated as part of the real estate, and this is the view gen-
erally prevailing in other jurisdictions.  *Los Angeles* v.
*Hughes,* 202 Cal. 731 (nursery stock treated as realty as

between tenant nurseryman and condemnor in eminent domain proceedings). Compare *Story* v. *Christin*, 14 Cal. (2d) 592 (personalty as between vendor and purchaser on cancellation of contract of sale). *Dubois* v. *Bowles*, 30 Col. 44, 66 (realty as between mortgagor and mortgagee). *Maples* v. *Millon*, 31 Conn. 598 (realty as between assignee of mortgagor and mortgagee). *Adcock* v. *Berry*, 194 Ga. 243 (realty as between mortgagor and mortgagee). *Smith* v. *Price*, 39 Ill. 28 (realty as between vendor and purchaser). *Price* v. *Brayton*, 19 Iowa, 309 (realty as between mortgagor and mortgagee). *Adams* v. *Beadle & Slee*, 47 Iowa, 439 (rights of real estate mortgagee to nursery stock held superior to those of chattel mortgagee). See annotation in 125 A. L. R. 1406. It may well be, as stated in several of the cases just cited, that the rule is different in controversies arising between landlord and tenant. But we are not faced with that question here. All that we are called upon to decide here is whether as between the petitioners and the Commonwealth in eminent domain proceedings the nursery stock in question is real estate, and we hold that it is.

We shall now discuss the consequences of this holding under the pertinent statutes relating to eminent domain. Section 7 of G. L. (Ter. Ed.) c. 81 authorizes the department of public works on behalf of the Commonwealth to acquire land for purposes of a State highway when necessary, and "When injury has been caused to the real estate of any person by the laying out . . . of a state highway, he may recover compensation therefor from the commonwealth under chapter seventy-nine." The provisions of c. 79 here pertinent are these. Section 1, which prescribes how a taking may be effected, reads, in part, "In case there are trees upon the land taken, or structures affixed thereto, the order of taking shall state whether the same are to be included in the taking, and, if they are not so included, shall allow the owner a reasonable time after the date of the order or after entry or possession to remove the same, to be specified in the order." Section 13, so far as material,

reads: "If there are trees upon or structures affixed to the land taken which are not included in the taking, the owner may remove the same, *but the damages shall include the value thereof, so far as they enhance the value of the land, and the value thereof for purposes of removal shall be deducted from the damages.* . . . If the owner of trees upon land taken refuses or neglects to remove them within the time specified in the order of taking, he shall be deemed to have relinquished his rights thereto" (emphasis supplied).

Under the foregoing provisions where the order of taking does not include trees — and the word "trees" as used in §§ 1 and 13 is broad enough to comprehend the nursery stock here involved[1] — the landowner is given a reasonable time to remove them. If the owner neglects to avail himself of this right he relinquishes his rights thereto. But this does not mean that trees and the like are to be excluded in fixing his damages. On the contrary, § 13 expressly provides that where "trees upon or structures affixed to the land" are not included in the taking the owner may remove them, "but the damages shall include the value thereof, so far as they enhance the value of the land, and the value thereof for purposes of removal shall be deducted from the damages." By force of these provisions the value of the trees for removal purposes is deducted whether or not the owner removes them. If he fails to remove them within the time specified in the order then he forfeits his rights in them for purposes of removal. But that is the extent of the forfeiture. The Commonwealth does not argue the contrary, its sole contention being that the nursery stock was personal property.

The agreed facts state that the "value of the nursery stock before the taking so far as it enhanced the value of the land, less the value thereof for the purposes of removal, was . . . $40,000." Under the statutes discussed above the petitioners were entitled to have this sum added to the

---

[1] See *Commonwealth* v. *Noxon,* 121 Mass. 42; *Murray* v. *Norfolk,* 149 Mass. 328.

value of the land — which apart from the nursery stock was $10,000 — in fixing their damages. Accordingly judgment is to be entered for the petitioners in the sum of $50,000.

*So ordered.*