HENRY NEWMAN & others, trustees, *vs.* COMMONWEALTH.

Middlesex. October 8, 1957. — December 4, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Eminent Domain,* Leasehold, Improvements, Right to damages. *Landlord and Tenant,* Taking by eminent domain, Termination of lease.

A lessee of premises taken in part by the Commonwealth by eminent domain during the term stated in the lease, which gave the lessee a right to remove at the termination of his tenancy any improvements of the premises made by him and an option to terminate the lease upon a taking of the whole or any part of the premises, was not entitled to any damages from the Commonwealth on account of the taking either for injury to his leasehold or for his improvements where he elected to terminate the lease pursuant to his option; and the owner of the premises was entitled to all the damages from the Commonwealth.

PETITION, filed in the Superior Court on September 8, 1955, by Henry Newman and others, trustees.

Shell Oil Company was allowed to intervene. The case was reported by *Lurie, J.*

*David A. Foley, (Harry J. Greenblatt* with him,) for the petitioners.

*Bernard Helman,* for the intervener.

No argument nor brief for the Commonwealth.

WILKINS, C.J. The petitioners, trustees of Hi-Way Realty Trust, are the owners and the intervening petitioner, Shell Oil Company, is the lessee of a parcel of land in Somerville a portion of which on November 2, 1954, was taken for highway purposes by the Commonwealth, acting through the metropolitan district commission. This petition for the assessment of damages and the intervening petition have been reported by a judge of the Superior Court without decision upon a case stated. G. L. (Ter. Ed.) c. 231, § 111.

The lease, dated November 7, 1952, for a term of twenty and one half years was from Hi-Way Realty Company, Inc.,

a predecessor in title of the petitioners (hereinafter called the trustees), who had notice of its terms. Pursuant to the lease the intervening petitioner (hereinafter called Shell) constructed an automobile service station consisting of a building and improvements which "were attached to and became part of the realty" with a right of removal at the termination of its tenancy.

The entire parcel comprised 14,613 square feet. The taking was of 3,512 square feet, on or under which were improvements constructed by Shell consisting of concrete entrances, pumps, islands, underground tanks, sign poles, and signs. The total damage resulting from the taking to all interests in the land and improvements is $70,000. "Shell has suffered damage by reason of said taking to both or either its leasehold and its improvements."

Paragraph 12 of the lease was: "If, without Shell's fault, the operation on the premises of an automobile service station, or the use of the premises therefor, is prevented, limited or impaired by any act or omission of any governmental authority, or becomes illegal, and such condition continues for ninety (90) days; or if such operation or use is at any time impaired or affected by the closing, relocation or alteration of any street adjoining the premises; or if any federal or state highway is rerouted from any such street; or if all or any part of the premises is condemned for public or quasi-public use: Shell may terminate this lease by giving Lessor at least ninety (90) days' notice. Shell may terminate this lease at any time for any reason by giving the Lessor or its assigns at least ninety (90) days' notice in writing, as hereinafter mentioned, and upon the payment by Shell to the Lessor herein or its assigns the sum of Twenty Thousand ($20,000.00) Dollars as liquidated damages."

Acting under paragraph 12, Shell sent the trustees a notice of termination effective August 31, 1955, and received from the trustees an acknowledgment dated October 18, 1955, which Shell accepted. The facts as to termination are contended by Shell to be immaterial. This contention cannot be sustained. As hereinafter appears,

we consider the act of termination of vital importance to the determination of the issues. That fact, being material, can be proved by proper evidence. There is nothing to the contrary in *Harvard Trust Co.* v. *Cambridge,* 270 Mass. 403, 407.

If Shell is entitled to any apportionment for damage to either its leasehold or its improvements, judgments are to be entered against the Commonwealth in favor of the trustees and Shell for $45,000 and $25,000, respectively, without interest and costs. If Shell is not entitled so to recover, judgment is to be entered against the Commonwealth in favor of the trustees for $70,000 without interest and costs.

The question presented, which is of first impression in this Commonwealth and possibly elsewhere, is the effect of a termination at the option of the lessee upon the institution of condemnation proceedings. All uncertainty could have been avoided by a more explicit provision in the lease. See *Savin Hill Yacht Club Association* v. *Savin Hill Yacht Club,* 246 Mass. 75, 81.

A valid taking of the whole premises, which divests the lessor's title, terminates a lease. *O'Brien* v. *Ball,* 119 Mass. 28. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115, 116. *Sparrow Chisholm Co.* v. *Boston,* 327 Mass. 64, 67. See *Boston* v. *Talbot,* 206 Mass. 82, 93. But a taking of a portion of leased premises, apart from some agreement of the parties, does not. *Parks* v. *Boston,* 15 Pick. 198, 205. *Patterson* v. *Boston,* 20 Pick. 159, 165–166. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 426. *W. M. McDonald Co. Inc.* v. *Hawkins,* 287 Mass. 71, 74–75. For any taking G. L. (Ter. Ed.) c. 79, §§ 24–29, give adequate remedy. *Edmands* v. *Boston,* 108 Mass. 535, 547. *Mills* v. *Samuels,* 230 Mass. 1. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 426. The respective rights of the parties can, of course, be modified by a clause in the lease. *Edmands* v. *Boston,* 108 Mass. 535, 547. *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 209 Mass. 298, 313–314. Thus, a pro-

vision that, in the event of a partial taking, the lease shall automatically terminate cuts off the lessee's right to damages. *Munigle* v. *Boston,* 3 Allen, 230. A similar result has been reached where a provision in the lease gave the lessor an election to terminate in the event of a taking for a public purpose. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115, 116–117. *Sparrow Chisholm Co.* v. *Boston,* 327 Mass. 64. *United States* v. *3.5 Acres of Land,* 57 Fed. Sup. 548 (D. C. Mass.). See *Bowser* v. *Chalifour,* 334 Mass. 348, 353. The net effect of these cases is that upon a contingency the property is to be treated the same as though there were no lease of it, and "the landlord can terminate the right of the tenant to share in the damages." *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115, 117. See Am. Law of Property, § 3.55.

In the case at bar it is hard to see how Shell could have any right to recover for damage to the leasehold after electing to give it up. Undoubtedly Shell faced a serious dilemma. It could retain the truncated premises for the remaining years of a long lease and pay the full rent subject to such compensation as it might receive as a result of the taking. Or it could avoid those problems by electing to terminate without the payment to the lessor of any sum as liquidated damages. But in the latter event, upon the analogy of the termination cases cited above, the lease would be gone completely with its burdens and benefits alike. It does not solve the issue by describing the right to elect as having been reserved for the benefit of the lessee. The question still persists as to what was the extent of the right so reserved.

Shell, however, contends that it is nevertheless entitled to compensation for the improvements which it has made and which it had reserved the right to remove. This was, however, a contract, and not a property, right. *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 209 Mass. 298, 307, 311. No separate item of damages could be recovered for the improvements, which are compensable only in so far as they enhance the value of the estate. *Ed-*

*mands* v. *Boston,* 108 Mass. 535, 549. *Allen* v. *Boston,* 137 Mass. 319, 321. *Beale* v. *Boston,* 166 Mass. 53, 56. *Perley* v. *Cambridge,* 220 Mass. 507, 512. *Beals* v. *Brookline,* 245 Mass. 20, 26.

We have never adopted in this Commonwealth any rule that structures or improvements present at the time of the taking which were theretofore subject to removal by the lessee are in themselves an interest in real estate within G. L. (Ter. Ed.) c. 79. Compare *Poillon* v. *Gerry,* 179 N. Y. 14; *Matter of City of New York (Allen St.),* 256 N. Y. 236, 241.

Cases relied upon by Shell are to be distinguished. In *Cogliano* v. *Commonwealth,* 334 Mass. 354, the only issue was between the owner and the State as to whether nursery stock was real estate, and it was held that it was. In *Sheehan* v. *Fall River,* 187 Mass. 356, an action for damages to a lessee's building in connection with the abolition of a grade crossing, no adverse landowner interest was involved.

In accordance with the terms of the report, the following entries will be made. On the petition, judgment for the petitioners for $70,000 without interest and without costs. Intervening petition dismissed.

*So ordered.*