PROPRIETORS OF THE LOCKS AND CANALS ON MERRIMACK RIVER & another *vs.* COMMONWEALTH.

Middlesex.     October 5, 1960. — January 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Construction of lease, Taking by eminent domain, Sublease. *Eminent Domain,* Leasehold, Improvements, Right to damages. *Real Property,* Reverter, Determinable fee. *Words,* "Awarded."

Under a lease to a corporation providing that buildings erected by the lessee on the leased land should remain its property and be removable by it, and that upon a taking of the premises by eminent domain during the term the lessor should be "entitled to all damages awarded on account of said taking (other than such thereof as shall be awarded on account of the taking of, or damages to, lessee's improvements)," where the land was taken during the term but a building erected thereon by the lessee was excluded from the taking and the lessee was allowed to remove it, the lessee was entitled to so much of the damages for the taking as represented, within the meaning of G. L. c. 79, § 13, the enhancement of the value of the land by reason of the presence of the building thereon. [634–635]

In a provision of a lease dealing with the right, as between the lessor and the lessee, to the damages "awarded" in case of a taking of the

leased premises by eminent domain, the reference was to the damages recoverable upon a petition for assessment of damages under G. L. c. 79, § 14, and not merely to those awarded at the time of the taking by the taking board under § 6.   [635]

A lease with a habendum clause providing for a term of indefinite duration although not containing the words "to . . . [the lessee's] use and behoof forever," and further providing that "in case . . . [the lessee] shall fail and neglect to pay . . . [the] rent for the space of one year after the same shall become due, or in case . . . [of another stated event], then in either of these events, the . . . [leased] premises shall revert to, and become the proper estate of" the lessor, gave the lessee a base or determinable fee in the premises which, without entry or action by the lessor, terminated and brought about a reverter of the premises to the lessor one year after the due date of rent not paid before the expiration of that year.   [636–638]

Where a base or determinable fee created in the lessee under a lease of a parcel of land for an indefinite period terminated, and the parcel reverted to the lessor, upon the occurrence of a certain event stated in the lease, and thereafter the parcel, not including a building erected by a sublessee thereon, was taken by eminent domain, the sublessee was not entitled to any of the damages payable by reason of the taking. [639]

PETITIONS for assessment of damages filed in the Superior Court on November 24, 1958, and June 19, 1959.

After fusion of the petitions the case was reported by *Wisnioski, J.*

*Donald R. Grant,* for Proprietors of the Locks and Canals on Merrimack River.

*Peter F. Curran,* for Armour and Company.

WILKINS, C. J.   The Commonwealth, acting by its department of public works, on December 24, 1957, took by eminent domain for highway purposes the fee in certain land and a temporary easement in adjacent land in Lowell. The Proprietors of the Locks and Canals on Merrimack River, as owner, and Armour and Company, as lessee of part, filed petitions for the assessment of damages.   By order of court the petitions were fused.   *Lumiansky* v. *Tessier,* 213 Mass. 182, 189.   The case was submitted on agreed facts and is reported without decision by a judge of the Superior Court. G. L. c. 231, § 111.

It is stipulated by the petitioners and by the Commonwealth that "the total amount of damages for which the

Commonwealth is liable to the party or parties entitled thereto by reason of the taking of the parcels numbered and described in the order of taking'' is $75,000 with interest from the date of taking. It is for us to decide whether apportionment is to be made between the petitioners. Boston and Maine Railroad, successor to Boston and Lowell Railroad Corporation, asserts no claim to any part of this sum. For the purposes of this case it is agreed that the two railroads are to be treated as if they were the same corporation, and we shall refer to them indiscriminately as the Railroad. See *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine R.R.* 245 Mass. 52, 58–59.

The premises, which are the subject of the petitions, consisted of two adjoining parcels (herein called northwest and southeast) owned by the Proprietors. About the year 1897 Armour Brothers, predecessor of Armour and Company (Armour), erected a two story brick building about one half upon each parcel. The northwest parcel was leased directly from the Proprietors to Armour Brothers and at the time of the taking was occupied under an extension of lease dated April 12, 1956, between the Proprietors and Armour for a five year term ending September 30, 1961. The southeast parcel was leased by the Proprietors to Boston and Lowell in 1837, and sublet to Armour Brothers in 1896. There were renewals of the sublease from time to time, the most recent being between the Railroad and Armour for a term to run from October 1, 1956, through September 30, 1966.

The building was expressly excluded from the order of taking, and Armour was given permission to remove it within a time satisfactory to the department. After the taking, Armour removed refrigeration machinery and equipment, but took no steps toward removal of the building, which was later demolished by direction of the department.

Different questions are presented by the northwest and southeast parcels.

634                                       341 Mass. 631

Proprietors of the Locks & Canals on Merrimack River v. Commonwealth.

### The Northwest Parcel.

The lease of July 1, 1926, from the Proprietors to Armour provided: "It is also covenanted . . . that all buildings . . . elevators, fixtures and equipment . . . heretofore built or placed in or upon said premises by the lessee or its predecessors while occupying said premises . . . or which may at any time during said term or any prolongation, extension or renewal thereof, be built or be placed in or upon said premises by the lessee, shall be and remain the property of the lessee, and at or before the final expiration of said term or any prolongation, extension or renewal thereof or within thirty days thereafter, may be removed by the lessee at its expense . . . ."

The renewal of the lease, dated April 12, 1956, contained the following: "The said lease as so renewed is made on the condition that in case the demised premises, or any part thereof, shall be taken for any street or other public use by the city or other public authority, after the execution of this renewal and before the expiration of the term of said lease as extended thereby, then the rent shall be reduced by the same proportion which the area so taken bears to the total area of the demised premises, the lessor shall be entitled to all damages awarded on account of said taking (other than such thereof as shall be awarded on account of the taking of, or damages to, lessee's improvements) and the lessor shall not be liable to pay any damages to the lessee on account thereof."

The Proprietors contend that "the combined effect of these two documents was that the Proprietors and Armour expressly agreed in advance that as to this half of the property Armour was to have no claim for damages against the Proprietors in the event of a taking unless its building should be taken and an award specifically made on account thereof." They argue that since the building was not taken nor any award made for its loss, the Proprietors are entitled to all the damages for the taking of this half; that all Armour lost was a contract right to remove the building at the expiration of its term, but that this was not an

341 Mass. 631                                                    635

Proprietors of the Locks & Canals on Merrimack River v. Commonwealth.

interest in real estate for which the Commonwealth was obligated to pay damages under G. L. c. 79.

Section 6 of that statute provides in part, "When a taking is made on behalf of the commonwealth, or of a county, city, town or district, the board by whom the taking is made shall, at the time when the order of taking is adopted, award the damages sustained by persons in their property by reason of such taking." Section 13 reads in part, "If there are trees upon or structures affixed to the land taken which are not included in the taking, the owner may remove the same, but the damages shall include the value thereof, so far as they enhance the value of the land, and the value thereof for purposes of removal shall be deducted from the damages."

The petitioners and the Commonwealth have stipulated that if "Armour is legally entitled to any damages arising out of the taking" of the northwest parcel "or out of the loss of that portion of its building located" thereon, but is not "entitled to any other damages arising out of the taking" (i.e. on the southeast parcel), Armour is entitled to a judgment against the Commonwealth in the amount of $17,000 with interest.

We interpret this agreement to mean that the enhanced value of the northwest parcel by reason of the building was $17,000. In the renewal of the lease there was an agreement that the Proprietors "shall be entitled to all damages awarded on account" of the taking except damages awarded on account of the "lessee's improvements." This necessarily means that the lessee is to be entitled to those. We construe "awarded" as not being confined to an award made at the time of the taking under G. L. c. 79, § 6, but as including the amount receivable by "A person entitled to an award of his damages" upon a petition filed, as in the case at bar, pursuant to G. L. c. 79, § 14. The question is not what might have been recovered by Armour under c. 79 apart from the modifying contract contained in the lease. See *Edmands* v. *Boston,* 108 Mass. 535, 547; *Cornell-Andrews Smelting Co.* v. *Boston & Providence R.R.* 209 Mass.

298, 313–314; *Newman* v. *Commonwealth*, 336 Mass. 444, 446.

### The Southeast Parcel.

The rents, which were due to the Proprietors on January 1 of each year from 1946 to 1956, inclusive, were respectively paid by the Railroad a year and nine days to a year and twenty-nine days later.[1] "The significance, if any, of these facts in regard to late payments of rent was not recognized by any of the parties" until several months after the taking.

Armour's rights are based upon its most recent sublease from the Railroad, dated September 26, 1956, but are limited by the Railroad's rights which are based upon its lease from the Proprietors, dated December 27, 1837, in which the habendum clause reads: "To Have and to Hold to said party of the second part, the said premises during their continuance as a Corporation, and while they continue to be the sole owners of said Rail Road, for the annual rent of Four Hundred Dollars to be paid on the first day of January each and every year during said term, and in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due, or in case said Rail Road should become the property of the Commonwealth, then in either of these events, the said premises shall revert to, and become the proper estate of said party of the first part."

This clause was analyzed in 1923 in an opinion of this court by Chief Justice Rugg. In *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine R.R.* 245 Mass. 52, the present petitioner brought a writ of entry against the Railroad, unsuccessfully contending that the consolidation of Boston and Lowell Railroad Corporation and Boston and Maine Railroad had caused the lease to expire by its own limitation. At p. 56, it was said, "The habendum clause shows that the leases are for an indefinite term. They are to continue until the happening of one of

---

[1] For example, the rent due January 1, 1946, was paid on January 15, 1947, and that due January 1, 1956, was paid on January 11, 1957.

several events and then to cease. The crucial event may happen at any time, or it may never happen. The leases, therefore, may never come to an end. The effect of the words used was to convey a base fee." Later (p. 57) the opinion quotes from the lease: "and in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due, or in case said Rail Road should become the property of the Commonwealth, then in either of these events, the said premises shall revert to, and become the proper estate of said party of the first part." In view of its pertinency we shall quote at length from what immediately follows in the opinion: "These are words avowedly stating in precise terms the conditions on which the estate shall terminate. They specifically declare the events which shall cause a reverter. The grammatical form of this part of the clause indicates that these two alone are the crucial occurrences which shall bring the estate to an end. The words 'and in case . . . or in case . . . in either of these events' naturally import a choice of one or the other of the two grounds specified. The inference naturally to be drawn from these words and this arrangement is that a purpose is manifested to make these two the only decisive events with reference to the term of the estate. If one resorts to approved canons for the construction of the language, the same result is reached. The structure of the sentence and the common meaning of the words alike confirm the idea that reverter rests upon one or the other of these two events. Neither of these events has happened. The rent has been promptly paid. The Commonwealth has not exercised its power to take over the property of the lessee."

The case last cited goes far toward deciding in favor of the contention of the Proprietors as much of the issue as relates to the nature of the Railroad's estate. The decision interpreted that portion of the habendum clause which we are considering, as giving the Railroad "a base, qualified or determinable fee, to end without entry or action" (*Dyer v. Siano,* 298 Mass. 537, 539–540) whenever should occur

one of two events, in this instance failure "to pay said rent for the space of one year after the same shall become due." Armour makes no effort to distinguish the decision in 245 Mass. and, indeed, does not even cite it. Instead, Armour asserts that the lease creates an estate in fee simple upon condition subsequent with a right of reëntry which required affirmative action to enforce. It is undoubted that if this is an estate on condition such affirmative action would be required. *Dyer* v. *Siano,* 298 Mass. 537, 539, and cases cited. The principal authority relied upon by Armour is the *Dyer* case, in which, after citing the *Proprietors* case in 245 Mass. as an authority as to what is a determinable fee, the court said, at p. 540, "But none of the common indicia of a determinable fee are found in the deed. Neither in the habendum nor in any other part of the deed are words like 'so long as,' 'during' or 'until,' commonly inserted in the habendum when such a fee is intended. The habendum is not only unqualified, but ends with the words 'to their use and behoof forever.' The provision ['Following the description, but before the habendum' (p. 538)] that 'otherwise,' that is, if the lands conveyed shall cease to be 'used for Railroad and Station purposes,' they shall 'revert to the Grantors,' does not of itself show an intention that the fee granted shall terminate and the lands 'revert' without entry or action." In the case at bar the habendum is qualified: "in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due . . . then . . . the said premises shall revert to, and become the proper estate of said party of the first part." The phrase "to their use and behoof forever" is lacking, and there is the strong phrase "then in either of these events, the said premises shall revert to, and become the proper estate of" the Proprietors. We, accordingly, are of opinion that the Railroad ceased to be the holder of the lease after January 1, 1947. *First Universalist Soc. of No. Adams* v. *Boland,* 155 Mass. 171. *Institution for Sav. in Roxbury* v. *Roxbury Home for Aged Women,* 244 Mass. 583. *Brown* v. *Independent Bap-*

*tist Church of Woburn,* 325 Mass. 645.    Restatement: Property, § 44, comment 1, illustration 17.    Powell, Real Property, § 187.    Tiffany, Real Property (3d ed.) §§ 218, 220.

The sublease of September 26, 1956, between the Railroad and Armour is not in the record, but by agreement of counsel was handed to us at the arguments.    We understand that the purpose was to enable Armour to try to meet an argument of the Proprietors that the record did not afford any information as to whether this portion of ''the building was to be and continue to be the personal property of Armour or was to become the property of the owner of the fee.''    The sublease contains a clause to the effect that buildings, structures, and fixtures shall remain the property of, and may be removed by, Armour at any time before or within ten days after the termination of this sublease. We do not consider this provision at length, because it would in no event be binding upon the Proprietors.    As there is no contract provision between Armour and the Proprietors analogous to that affecting the northwest parcel, Armour cannot recover anything for the portion of the building upon the southeast parcel.

### Conclusion.

In accordance with the terms of the stipulation let the following entries be made:    Judgment for $17,000 and interest for Armour against the Commonwealth.    Judgment for $58,000 and interest for the Proprietors against the Commonwealth.    Each judgment is to include interest at four per cent from December 24, 1957.

*So ordered.*