No. 45,623

PHILLIPS PETROLEUM COMPANY, *Appellee,* v. ELLIS G. BRADLEY and LENORE K. BRADLEY, *Appellants.*

(468 P. 2d 95)

Opinion filed April 16, 1970.

*Donald E. Willson,* of Madden, Willson and Winger, of Kansas City, Missouri, argued the cause, and *Gwendolyn V. Falkenberg,* of Overland Park, was with him on the brief for the appellants.

*John J. Gardner,* of Gardner and Davis, of Olathe, argued the cause, and *James A. Robertson* and *Mel Bloomfield,* both of Bartlesville, Oklahoma, were with him on the brief for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from a controversy between a landlord and tenant over the apportionment of a condemnation award.

The fee title to the real estate and improvements involved was owned by the appellants, the Bradleys, and the property was leased to Phillips Petroleum Company under a written lease dated April 30, 1960. The lease was for a term of twenty years. Lessee had the right to renew the lease for two additional terms of five years each. The primary term of twenty years commenced on December 1, 1960, when the parties agreed that the filling station constructed by the Bradleys was ready for operation by Phillips. In addition to a fixed monthly rental of $565.00, Phillips agreed to pay as additional rent one and one-half cents per gallon of gasoline sold in excess of 385,000 gallons per contract year.

The entire leased property was taken in condemnation on March 9, 1966, and all parties agreed to a settlement of $100,000.00 as the total award for the property taken. The amount of the award was paid into court. On June 3, 1966, Phillips sent the Bradleys a certified, return receipt requested letter in which Phillips exercised its option to terminate the lease in accordance with the provisions of Section 7 of the lease agreement, which reads:

"If the use of said premises as a gasoline and oil service station or the storage or sale of gasoline, oil or oil products on said premises shall be prohibited or enjoined by lawful authority, or if all or any part of said premises is taken in condemnation, making premises unsuitable for use as a service station, lessee may, at its option by giving to Lessor thirty (30) days' notice of its intention so to do, terminate this lease upon payment of all rentals due up to the expiration of said thirty (30) day period."

On January 5, 1968, the trial court entered a pre-trial memorandum decision containing certain conclusions of law relating to the rights of the lessee and the Bradleys as a result of the taking, the lease and the letter exercising the option to terminate the lease. The conclusions are in part as follows:

"2. The lease did not provide for an apportionment of the award nor exclude the lessee from sharing in the award.

"3. The complete and entire right, title and interest of the plaintiff, lessee, and the landlords' entire estate in the leased premises were taken on March 9, 1966, and all of their respective interests therein were extinguished.

"4. The total taking on March 9, 1966 terminated the lease by operation of law, and all of the rights of the lessors and lessee became fixed at that time.

"5. The notice by the Phillips Petroleum Company purporting to terminate the lease had no legal effect, and does not bar it from sharing in the award to the extent of the fair market value of its leasehold interest over the term of years after March 9, 1966."

Pursuant to a stipulation between Phillips and the Bradleys an order was entered authorizing and directing the payment of $56,078.84 out of the agreed award to the holder of the mortgage and further directing that said sum be credited against the interest of the Bradleys. On the hearing for apportionment, the remaining $43,921.16 of the award was divided between the parties by the trial court by the awarding of $22,395.46 to Phillips and $21,525.80 to the Bradleys. The award of $22,395.46 to Phillips was predicated upon a finding that it had a value in the lease of $20,708.46 over a remaining term of 25 years, a value of $1,187.00 for fixtures and equipment not removed, and a value of $500.00 as the cost of removing certain equipment.

The appellants take issue with the conclusions of the trial court and contend that (1) the respective rights and interests of the parties in the leased premises were not extinguished by the taking in condemnation on March 9, 1966, (2) the total taking did not terminate the lease by operation of law fixing the rights of the lessors and lessees as of the time of the taking and (3) the notice of Phillips Petroleum Company terminated the lease and barred the lessee from sharing in the award.

We cannot agree with the contentions made by appellants.

In *State Highway Commission v. Safeway Stores*, 170 Kan. 413, 226 P. 2d 850, we held:

"A tenant for years under a written lease is an 'owner' of property within the meaning of that term as used in our condemnation statutes and is entitled to compensation if his leasehold estate is damaged by the exercise of eminent domain." (Syl. ¶ 1. The decision was set aside on different grounds on rehearing, *State Highway Commission v. Safeway Stores*, 170 Kan. 545, 228 P. 2d 208.)

The above rule was again announced in *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332 P. 2d 539.

The right of the lessee to compensation, as any other right, may be waived or contracted away by the terms of the lease. However, the lease in question contains no such provision.

It is the very general rule that the taking of an entire tract of land under lease by eminent domain abrogates the relation of landlord and tenant. (49 Am. Jur. 2d, Landlord and Tenant, § 990, p. 960.)

In *Kansas Homes Development Co. v. Kansas Turnpike Authority*, 181 Kan. 925, 317 P. 2d 794, we stated at page 929 of the opinion:

"The condemnation proceedings in this controversy divested the owner, lien holders and all other interested parties of all title to the land acquired and vested it in the Authority upon payment of the commissioners' appraisement and award of $60,000 (G. S. 1955 Supp. 68-2006) free and clear of any liens or encumbrances whatsoever (*Federal Land Bank v. State Highway Comm.*, supra [150 Kan. 187, 92 P. 2d 72]), but it did not have the effect of discharging the obligation of paying the liens or encumbrances of record. . . ."

In *Newman v. Commonwealth*, 336 Mass. 444, 146 N. E. 2d 485, cited by appellants, we find the following statement:

"A valid taking of the whole premises, which divests the lessor's title, terminates a lease. . . . But a taking of a portion of leased premises, apart from some agreement of the parties, does not. . . . The respective rights of the parties can, of course, be modified by a clause in the lease. . . ." (p. 446. Citations omitted.)

The lease agreement between Phillips and the Bradleys does not have any specific provisions determining how each party will share in an award in the event the property is condemned. Provision 7 of that agreement gives the lessee the option to terminate the lease if the property is condemned, making the premises unsuitable for use as a service station. This option to terminate has meaning where only a portion of the property is taken in the condemnation action. Lessee, in the event of a partial taking, could then decide whether to stay under the lease agreement and share in the condemnation award or to terminate the lease entirely and not share in the condemnation award. However, where there has been a total taking the lessee's rights to share in the award become vested at the time of the taking, absent an agreement to the contrary.

Appellants argue that appellee, by sending written notice to terminate the lease to the landowners on June 3, 1966, almost three months after the entire tract had been condemned, exercised its option to terminate and thus is barred from sharing in the award. We must agree with the trial court that as Phillips' rights to share in

the condemnation award were determined when the entire tract was taken in March, 1966, the notice to terminate had no legal effect.

We have not ignored the foreign cases cited by appellants. They are not in point here. They either deal with cases where there was a partial taking or where the landlord had reserved an absolute right to cancel the lease in the event the premises were taken by condemnation.

We must conclude that the taking by eminent domain of the entire premises divested the landlord's title and terminated the lease. The rights of the landlord and tenant to compensation were fixed as of the date of the taking.

The appellants object to the sufficiency of the evidence to support the trial court's findings. We have examined the record and find in the testimony of the expert witness and records submitted by the appellee substantial competent evidence to support the trial court's findings as to the value of the leasehold interest and the apportionment of the compensation. Space does not justify a lengthy presentation of the evidence.

Finally, appellants contend that the court erred in allowing appellee the sum of $1,187.00 for the value of attached fixtures not removed under the terms of the lease prior to the condemnation of the entire tract and the sum of $500.00 for the cost of removing certain equipment.

Provision 4 of the lease agreement provides:

"All pumps, machinery, apparatus and equipment furnished by Lessee to the leased premises shall be and remain the property of Lessee, and Lessee shall have the right, at its option, at any time before the expiration or termination of this lease, and for a reasonable time thereafter, to remove same."

The appellants contend that the leasehold interest and improvements or fixtures of a tenant should be valued together as a unit and not separately, and in support of its position quotes from 27 Am. Jur. 2d, Eminent Domain, § 292, p. 101, which reads as follows:

"Primarily the property is to be valued as a whole without regard to who put the buildings or fixtures there, or the right to remove them. So, upon the condemnation of leased premises which include fixtures or other improvements affixed or annexed to the premises by the lessee, which, as between the lessor and lessee, were to remain the property of the lessee, the view has been taken that in determining the compensation due the lessee, the leasehold and improvements should be valued as a unit, and not as separate items. . . ."

The appellee contends that the fixtures should be valued sepa-

rately from the leasehold and in support of its contention cites the authorities which immediately follow.

In 27 Am. Jur. 2d, Eminent Domain, § 292, p. 99, it is stated:

". . . If, as against the lessor, the lessee has the right, prior to or upon the expiration of his term, to remove fixtures, structures, or other improvements installed or erected by him upon the property taken, he is, generally speaking, entitled to be compensated for such improvements. . . ."

The same rule is stated in an annotation at 3 A. L. R. 2d, p. 302:

"Generally speaking, a lessee is entitled to compensation for fixtures, structures, or other improvements installed or erected by him upon property taken under eminent domain, if, as against the lessor, he has the right to remove such improvements prior to or upon expiration of his term. . . ."

The above statements are not in conflict with authority quoted by appellants. Appellee's quotations are authority for the proposition that the lessee should be compensated for fixtures added by him if he has the right to remove them. The appellants' quotation states how the lessee is to be compensated for the fixtures.

It has long been the rule that where leased property is taken by eminent domain, it is ordinarily valued as though held in a single ownership rather than by separately valuing the interests of the lessor and lessee, and the compensation for the property taken or damaged is apportioned by the district court between the lessor and lessee according to their respective interests. The condemner has no interest in the apportionment proceedings. It has met its obligation when it has paid into court the total amount of the award. (29A C. J. S., Eminent Domain, § 198, p. 873.)

We think the better rule is that insofar as possible the leasehold estate be valued in the same manner for the purpose of apportionment and the leasehold and improvements should be valued as a unit rather than separate items.

However, there must be exceptions to all rules if just results are to be obtained in all cases. Here there was an absence of a market value in the sense there was a lack of evidence of a market value. It was necessary that the expert witnesses base their appraisal of the fair market value on the gallons of gasoline sold and apply thereto various formulas and tables, one of which was Inman's coefficient for a lessee's profit.

In arriving at the market value in such a manner, the value of the fixtures which the lessee had the right to remove and which were taken in the condemnation proceedings was not included. It was, therefore, properly added by the trial court.

We believe the rule announced in *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332 P. 2d 539, applies here. On page 779 of the opinion we stated:

"The absence of market value, in the sense that there is a lack of evidence of comparable sales, does not prevent recovery by the owner in the event of condemnation. It occasionally happens that a parcel of real estate or a leasehold interest taken by eminent domain is of such a nature, or is held or has been improved in such a manner, that, while it serves a useful purpose to its owner, he would be unable to sell it at anything like its real value. Where the usual means of ascertaining market value are lacking, or other means must from necessity of the case be resorted to, it is proper to determine the market value by considering the intrinsic value of the property, and its value to the owners for their special purposes. The owner of the property taken is not required under such circumstances to make any pecuniary sacrifices. He is entitled to whatever the property is worth to him, or anyone else, for any purpose to which it is adapted. . . ."

We conclude that, under the circumstances in this case, the trial court properly added to lessee's apportioned share the value of the fixtures which were placed on the real estate by the lessee and which it had a right to remove.

The question of the allowance of cost of removing personal property not taken in the condemnation proceeding presents another difficult problem.

An examination of the record does not give definite information on the character of the property removed by the appellee. The trial court in his memorandum decision states:

"The depreciated value of the underground tanks and related filling station equipment not recovered by Phillips Petroleum Company was $1,187.00, and *the cost of removing the personal property, hoist, etc. which were removed was $500.00.*" (Emphasis supplied.)

However, in his conclusions of law he identifies the items removed as "tanks, etc." Regardless of the exact nature of the items removed they were treated as personal property and not included in the property condemned and covered by the condemnation award. Although the lease gave the lessee the right to remove it was not to be compensated for the removal under the terms of the lease. We had this question before us in the recent case of *City of Manhattan v. Eriksen*, 204 Kan. 150, 460 P. 2d 622. We held:

"In an eminent domain proceeding where there is a taking of the entire leasehold estate, the cost of removal by the lessee of his goods, wares, merchandise and *other personalty* for a reasonable distance is not a proper element of damage for which he may be compensated under the Eminent Domain Procedure Act (K. S. A. 26-513)." (Emphasis supplied.)

We are forced to conclude that the court erred in the allowance of $500.00 to the lessee for the removal of personal property.

The judgment is affirmed as to all issues except the allowance of $500.00 for removing personal property and as to that issue it is reversed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: On the facts in this case when the Phillips Petroleum Company terminated its lease in accordance with the specific provisions of section 7 in the leasing agreement, all rights Phillips had to the proceeds of the condemnation award were terminated.

The lease in question between the Phillips Petroleum Company and the Bradleys was prepared by Phillips, and specifically made provision for termination of the lease by the lessee in the event the premises *were taken* in whole or in part by condemnation. Under these circumstances the lease must be construed favorably to the Bradleys.

While the court in its opinion speaks of the general rule—that the taking of an entire tract of land under lease by eminent domain abrogates the relation of landlord and tenant—the lease in this case provided otherwise.

The date of the taking of the property in question under the condemnation action was March 9, 1966. The operator of the service station for Phillips left the station on April 25, 1966, but Phillips continued to pay rent to the Bradleys through September, 1966.

The court, in speaking of provision No. 7 of the leasing agreement, which gives the lessee the option to terminate the lease if the property is condemned, making the premises unsuitable for use as a service station, says: "This option to terminate has meaning where only a portion of the property is taken in the condemnation action." (p. 245.) This statement is absolutely contrary to the wording of the option provision which says, "if *all or any part* of said premises *is taken in condemnation*, making premises unsuitable for use as a service station, *Lessee may, at its option* by giving to Lessor thirty (30) days' notice of its intention so to do, *terminate this lease* upon payment of all rentals due up to the expiration of said thirty (30) day period." (Emphasis added.)

By the express language of provision No. 7 the right to terminate does not accrue to the lessee until "*all or any part* of said premises

*is taken in condemnation."* Therefore, the actual taking in condemnation is a condition precedent to the exercise of the right of Phillips to terminate the lease, and it is a condition which was placed in the lease by Phillips. Upon the happening of that condition, Phillips voluntarily and properly exercised its option to terminate the lease by its letter of June 3, 1966. Thereafter Phillips no longer had any rights or interest in the award for the taking of the leased premises.

This is the construction Phillips placed upon the leasing agreement which it drafted. The lease, as it appears in the record, purports to be a form lease used by the Phillips Petroleum Company for its purposes in leasing premises to be used for service stations.

The court in its opinion says, "where there has been a total taking the lessee's rights to share in the award become vested at the time of the taking, absent an agreement to the contrary." (p. 245.)

The rights of the lessors and lessee are provided for in this lease in the event there is a condemnation action. These terms are controlling in this contractual relationship. (See annotation entitled "Condemnation—Rights of Lessee," 96 A. L. R. 2d 1140, 1144.)

In the present case only Phillips, the lessee, had authority to terminate the lease. The general rule is that the exercise of such authority by the lessee to terminate the lease terminates the right of the lessee to an interest in the property and the condemnation award. (96 A. L. R. 2d 1140, 1143.)

A Kansas case directly in point is *State Highway Commission v. Safeway Stores,* 170 Kan. 413, 226 P. 2d 850. There the state was widening the highway and took part of the parking area of the Safeway Store. *After the condemnation* Safeway exercised its option to terminate, as provided by the lease. This court affirmed the trial court which denied Safeway the right to recover on the ground it had exercised its contractual right to terminate the lease. On rehearing of the *Safeway Stores* case (170 Kan. 545, 228 P. 2d 208), this court reversed on a wholly separate ground ordering the final judgment previously entered by the Supreme Court set aside.

A parallel case is *Newman v. Commonwealth,* 336 Mass. 444, 146 N. E. 2d 485. There the Shell Oil Company was the lessee, and the lease contained a provision giving Shell the right to terminate the lease if any or all of the premises were condemned. There was a partial condemnation of the premises on November 2, 1954, and Shell gave notice of its election to terminate the lease effective

August 31, 1955. It was held Shell was not entitled to share in the condemnation award after electing to terminate its leasehold interest.

In *Carroll Weir Funeral Home v. Miller*, 2 Ohio St. 2d 189, 207 N. E. 2d 747, the lessors were given the option to terminate if the entire building was condemned by eminent domain. After the condemnation the lessors gave written notice of their termination of the lease. The court there stated the rule:

". . . A lessor and lessee may, by including a properly worded provision in their lease, provide that upon appropriation of the property under eminent domain the lessor may at his option terminate the lease. Under such an agreement, if the property is appropriated, the lessor may terminate the lease. The lessee would then have no property right in the premises. Thus, he would have no right to compensation. . . ." (p. 191.)

In the syllabus of *State v. Sheets*, 48 Wn. (2d) 65, 290 P. 2d 974, the following rule is stated:

"When a written lease provides that the taking of all or a portion of the leased property may terminte the lease at the option of either party, the term expires when such taking occurs and the option is exercised; and no unexpired leasehold remains for which the lessee can claim compensation." (Syl. ¶ 3.)

The Kansas cases upon which the majority opinion relies have no provisions in the lease in the event of condemnation, and therefore have no application here.

In my opinion Phillips is barred from sharing in the award, because it voluntarily terminated its lease in accordance with the specific written provisions in the lease designed to cover the event of total condemnation.

Further, I am of the opinion the court is establishing a bad precedent when it says, "the trial court properly added to lessee's apportioned share the value of the fixtures which were placed on the real estate by the lessee and which it had a right to remove." (p. 248.)

Where a lessee has specifically provided that upon termination of the lease it has the right to remove fixtures placed upon the leased premises, it should not be permitted to recover compensation for these fixtures when the lease is terminated. In this case the insult is compounded because the parties settled for a total award in the sum of $100,000 which became fixed. To allow Phillips the value of the fixtures it removed or had the right to remove from the premises in accordance with the terms of the lease subtracts from the landowners' share. This is absolutely contrary to provisions of

the lease, and it prevents the landowners from receiving full compensation for the property taken from them.

I respectfully submit the judgment of the lower court should be reversed *in toto*.

FATZER and FONTRON, J., join in the foregoing dissent.