(945 P.2d 10)
No. 76,842

THE CITY OF MANHATTAN, KANSAS, *Plaintiff*, v. DANA D. GALBRAITH and JOHN P. GALBRAITH, LISA M. SCOTT and WILLIAM SCOTT, *Defendants/Appellees*, and TACO TICO, INC., *Defendant/Appellant*.

Opinion filed September 12, 1997.

*Bradley A. Stout, Eric S. Strickler,* and *Nancy J. Strouse,* of Triplett, Woolf & Garretson, L.L.P., of Wichita, for appellant.

*John R. Hamilton* and *Larry E. Gregg,* of Hamilton, Gregg, Barker & Johnson, of Topeka, for appellees.

Before BRAZIL, C.J., RULON and GERNON, JJ.

GERNON, J.: This appeal concerns the apportionment of a condemnation award. Taco Tico, Inc., (Taco Tico) as a tenant, appeals from the district court's decision to award the entire amount of a condemnation award to Dana and John Galbraith and Lisa and William Scott (Galbraith and Scott), the owners of the property in question. Taco Tico contends the district court erred in ruling the

termination clause of the lease precluded it from sharing in a portion of the condemnation award for the loss of its leasehold.

Taco Tico leased property from Galbraith and Scott and subleased the property to its franchisee, L.J.K., Inc. The lease was prepared by Taco Tico and provided for a term of 15 years with two 5-year options. The initial term of the lease was from March 1, 1981, to February 29, 1996, with the two 5-year extensions extending the lease term until February 28, 2006. Taco Tico claims the lessor was notified that it was exercising its right to extend the lease term before the condemnation proceedings were initiated.

The lease contained the following provision:

"In the event all of the leased premises shall be taken under the right of eminent domain by any authority having the right of condemnation, or if a portion of the premises is so condemned as will prevent the practical use of the premises for LESSEE's purposes, this Lease and all obligations hereunder shall terminate on the date title vests, pursuant to such proceeding. If such taking does not prevent the practical use of the premises for the purposes of the LESSEE, then this Lease shall continue in full force and effect and the rental shall abate·[sic] proportionately and such other adjustments shall be made as shall be just and equitable.

"In the event eminent domain or condemnation action is commenced involving the leased premises, LESSEE shall have the right to participate in all negotiations with the parties bringing such action concerning its lease and the rights to the leased premises as evidenced by this Lease."

The City of Manhattan (City), overtaken by events, filed a petition to condemn all interests in the property for purposes of constructing a new intersection. The City paid the full amount of the award into district court, and title to the land vested in the City.

Galbraith and Scott filed a motion with the district court requesting payment of the entire amount of the condemnation award. Galbraith and Scott alleged that Taco Tico was prohibited from recovering any portion of the award based on the clause in the lease which provided for the automatic termination of the lease on the date title vested in the condemning authority.

Taco Tico filed a motion requesting a portion of the condemnation award for the damage to the leasehold, arguing the lease provision did not expressly provide that it was prevented from receiving any portion of the condemnation award upon condemnation of the property.

The district court awarded the entire amount to Galbraith and Scott, concluding that "[t]his condemnation action terminated the lease by agreement of the parties, rather than by operation of law, and there is therefore no remaining term under the lease upon which to base or apportion the condemnation award." The court further stated:

"The only right reserved to Taco Tico, Inc., in the lease with respect to a condemnation action is the 'right to participate in all negotiations . . . concerning the lease and rights to the leased premises as evidenced by the lease.' There is no provision in the lease entitling Taco Tico to participate in the condemnation action or to share in any award resulting therefrom. Since the right of possession terminated upon condemnation of the property, the only purpose to be served by the negotiation provision of the lease must necessarily be limited to lessee's right to retain personal property, fixtures and equipment installed by lessee under paragraph 16; removal of certain items protected by trademark, service mark or design patent registration pursuant to paragraph 19, coordination of the date of taking with the ongoing business operations of lessee; and lessee's statutory rights to relocation benefits."

Taco Tico appeals.

Taco Tico argues the district court erred in finding the termination clause in the lease precluded it from sharing in the condemnation award. It maintains a lease must contain clear and unequivocal language stating the parties' intent to waive a lessee's right to share in such award. Taco Tico contends the lease in question does not contain such express language. Taco Tico concludes that in the absence of such an express contractual waiver, it is entitled to share in the condemnation award for the taking of the leasehold.

We must interpret the termination provision in the lease that Taco Tico entered into with Galbraith and Scott's predecessor in interest. The lease is a written agreement. Therefore, this court may construe the document and determine its legal effect. See *Galindo v. City of Coffeyville*, 256 Kan. 455, 463, 885 P.2d 1246 (1994). When construing the instrument, this court is not bound by the trial court's interpretation. See 256 Kan. at 463; *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 719, 840 P.2d 1107 (1992).

In Kansas, "a tenant under a lease is an 'owner' of property within the meaning of that term as used in our condemnation stat-

utes, and is entitled to compensation if his leasehold estate is damaged by the exercise of eminent domain." *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 780, 332 P.2d 539 (1958).

However, " 'if the lease itself includes a provision in respect of the rights of the parties in the event of the condemnation of the leased premises, such provision is controlling, if applicable to the particular case.' " *State Highway Commission v. Safeway Stores*, 170 Kan. 413, 418, 226 P.2d 850, *judgment set aside on other grounds on reh.* 170 Kan. 545, 228 P.2d 208 (1951) (quoting 18 Am. Jur., Eminent Domain § 232, p. 866); see *Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, 244-45, 468 P.2d 95 (1970).

Galbraith and Scott maintain the lease contains an express agreement that the lease terminates upon condemnation. They argue Taco Tico has waived or contracted away its right to recover damages from the condemnation because there is no unexpired term of the lease remaining after title vested in the City.

Taco Tico argues that the district court's reliance on the termination provision in the lease to preclude it from sharing in the lump sum payment is indistinguishable from what normally occurs by law and, thus, should not bar it from obtaining its share of the damages. Taco Tico refers to *Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, and dicta from *Beaverton Urban Renewal Agency v. Koning*, 53 Or. App. 842, 632 P.2d 1359, *rev. denied* 291 Or. 893 (1981), as support.

Galbraith and Scott correctly argue that neither case is applicable to the present case. The courts in *Bradley* and *Koning* considered lease provisions which provided an option to terminate the lease upon condemnation. Those cases did not construe an automatic termination clause such as the one in issue here and are distinguishable on that basis.

Galbraith and Scott contend the majority of jurisdictions that have addressed this type of clause has held that an automatic termination clause forecloses a lessee from sharing in the condemnation proceeds because the lessee no longer has a compensable interest in the condemned property. See, *e.g., R & R Welding Supply Co. v. Des Moines*, 256 Iowa 973, 981, 129 N.W.2d 666

(1964); *Korengold v. City of Minneapolis*, 254 Minn. 358, 363, 95 N.W.2d 112 (1959); Annot., 22 A.L.R.5th 327.

Taco Tico, however, urges this court to follow those courts which have refused to allow a tenant's rights to be taken away in the absence of an express contractual waiver.

In *Fibreglass Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 373 (Colo. 1990), a case not cited by either party, the Colorado Supreme Court held that the following lease provision precluded the tenant from sharing in the condemnation proceeds:

" 'If, during the term of this Lease Agreement, the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain or sold to the governmental authority in lieu of condemnation . . . this Lease Agreement shall terminate and the rent shall be apportioned as of the date the governmental authority takes possession of the Leased Premises pursuant to such Proceeding.' "

The Colorado court observed that while a lessee is generally entitled to compensation for the condemnation of the lessee's unexpired interest in the leasehold, a tenant may waive that right where the lease contains a legally adequate condemnation clause. The court found the clause in that case was unambiguous and consistent with the typical condemnation clause. The court further recognized:

"Most jurisdictions that have considered the legal effect of a condemnation clause providing only for automatic termination of the lease upon condemnation have held that because the lessee's leasehold interest is destroyed at the time of condemnation, the lessee no longer has any interest in the condemned property for which he or she should be compensated, and the lessee is foreclosed from sharing in the condemnation proceeds." 799 P.2d at 375-76.

The Colorado court then distinguished *Koning* and *Maxey v. Redevelopment Authority of Racine*, 94 Wis. 2d 375, 400-04, 288 N.W.2d 794 (1980), on the grounds that they did not construe automatic termination clauses. 799 P.2d at 377. The court concluded:

"We find it significant that the lease agreement provided that the lease agreement would terminate upon condemnation. By agreeing to this automatic termination clause, [the tenant] contracted away its common-law right to share in the condemnation proceeds. In accordance with the rule followed by a majority of the jurisdictions that have considered similar automatic termination clauses, [the

tenant's] leasehold interest in the leased premises terminated at the time of condemnation, and [the landlord] was not obligated to share the proceeds with [the tenant]." 799 P.2d at 377.

Although both Taco Tico and Galbraith and Scott disagree on the legal effect of the clause in the lease, their interpretations do not force a finding of ambiguity. See *Boos v. National Fed'n of State High School Ass'ns*, 20 Kan. App. 2d 517, 522, 889 P.2d 797 (1995).

The determination of whether an ambiguity exists in a written document is a question of law. *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, 534, 722 P.2d 1073 (1986). "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning." *Boos v. National Fed'n of State High School Ass'ns*, 20 Kan. App. 2d at 522-23. An interpretation should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. *Barnhart v. McKinney*, 235 Kan. 511, 519, 682 P.2d 112 (1984); *Maltby v. Sumner*, 169 Kan. 417, 426, 219 P.2d 395 (1950). The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. *Gore v. Beren*, 254 Kan. 418, 427, 867 P.2d 330 (1994).

When an ambiguity appears, the language in the document is construed against the party who drafted the instrument. *Holly Energy, Inc. v. Patrick*, 239 Kan. at 534. The facts and circumstances surrounding the document's execution become relevant only if the instrument is ambiguous on its face and requires aid to clarify it. *Arkansas Louisiana Gas Co. v. State*, 234 Kan. 797, 800, 675 P.2d 369 (1984); *Maltby v. Sumner*, 169 Kan. at 426. If the agreement is unambiguous, "it must be enforced according to its terms so as to give effect to the intention of the parties at the time they entered into the contract, as determined from the instrument itself." *Johnson v. Johnson*, 7 Kan. App. 2d 538, 542, 645 P.2d 911, *rev. denied* 231 Kan. 800 (1982).

Here, the lease provision unambiguously provides that if all the leased property is condemned, *"this Lease and all obligations here-*

*under shall terminate* on the date title vests, pursuant to such proceeding." (Emphasis added.)

Taco Tico maintains that since forfeitures are abhorred under Kansas law, the agreement should not be construed to forfeit its right to share in the condemnation proceeds in the absence of an express waiver of that right.

Although the law abhors forfeitures, "[t]he law does not abhor the fulfilling of contracts where the parties have bound themselves to certain definite requirements or the loss of the lease in unambiguous terms." *Hinshaw v. Smith*, 131 Kan. 351, 357, 291 Pac. 774 (1930).

The provision in question is an unambiguous contractual agreement by the parties to terminate the lease when title vests in the condemning authority. The wording appears clear and all encompassing. We agree with the district court's finding that Taco Tico's right to possession terminated upon condemnation of the property. It follows then that the only reasonable purpose for the negotiation portion of the condemnation provision is to ensure the company can retain its personal property, fixtures, and equipment; remove certain items protected by trademark or patent registration; coordinate the date of taking with its ongoing business operations; and obtain its statutory rights to relocation benefits.

While a tenant may be entitled to compensation for the extent his or her leasehold interest is damaged by a taking of the property under eminent domain, that right can be waived by agreement such as in the present case. By agreeing to the automatic termination clause, Taco Tico has contracted away its right to share in the condemnation award.

In accordance with *Fibreglass Fabricators, Inc.*, and the majority of other jurisdictions addressing similar clauses, Taco Tico's interest in the leased property terminated when title vested in the City. Since there is no remaining term of the lease for which it is entitled to compensation, it is precluded from sharing in the condemnation award. The district court did not err in awarding the entire amount of the condemnation proceeds to Galbraith and Scott.

Affirmed.