(978 P.2d 951)
No. 80,996

DONALD D. JAYNE, *Appellant*, v. KENNEDY & COE, L.L.C., *Appellee*.

Opinion filed April 30, 1999.

*Dan M. McCulley*, of Harper, Hornbaker, Altenhofen & Opat, Chartered Lawyers, of Junction City, for appellant.

*Larry G. Michel*, of Kennedy, Berkley, Yarnevich & Williamson, Chartered, of Salina, for appellee.

Before MARQUARDT, P.J., KNUDSON, J., and DAVID W. KENNEDY, District Judge, assigned.

KNUDSON, J.: Donald D. Jayne appeals from the judgment of the district court concluding that Kennedy & Coe, L.L.C., did not breach its contractual obligation owed to Jayne.

Jayne is the successor in interest to an employment procurement contract entered into between Key Employment Services (Key) and Kennedy & Coe (employer). As a result of Key's efforts, Robert Keck was hired by the employer but never actually went to work for the firm. Jayne contends entitlement to a fee under the contract; the employer contends no fee is owed.

The underlying facts are not in dispute. After Key located and referred Keck to the employer, he was hired. However, within 30 days and before Keck actually started to work, the employer's needs were altered, with no alternative position acceptable to Keck. The employer and Keck mutually agreed to terminate the employment relationship, and Keck was provided with a $10,000 sever-

ance package. Thus, the question: Under these circumstances is Key entitled to its referral fee?

The schedule of charges in the referral contract state, in material part:

"1. The charge for our services is earned when an individual referred by us accepts an offer of employment by an employer . . . within one (1) year from date of last referral or discussion of the individual.

. . . .

"4. Our service charge is due and payable when earned. . . .

"5. GUARANTEES: Placements are guaranteed under the following circumstances: 1) Termination is the fault of the employee, 2) The account is paid per the invoice terms, and 3) Strict adherence to this entire agreement.

    A. Placements are guaranteed for a one hundred and eighty (180) calendar day period after employment commences. Under the conditions of the guarantee the service charge will be .56% of the original service charge for each calendar day of employment.

    B. There is no charge when termination occurs within the first thirty (30) calendar days of employment."

The issues were submitted by a stipulation of facts and documentary evidence. Jayne argued under the written terms of the referral agreement that a commission of $14,850 was earned when Keck accepted the employer's offer of employment. The district court found the mutual dissolution of the employment relationship to be a termination within the meaning of paragraph 5B of the referral agreement and, therefore, no charge was owed. In its order denying Jayne's claim, the district court entered two findings crucial to the issue now on appeal:

"It matters not whether the dissolution of employment was the fault of the candidate or the defendant, it was mutual. Therefore, the candidate participated in the termination. Such is deemed 'fault' by this Court.

"The contract as drafted by the plaintiff specifies that if termination (no caveat is specified) occurs within thirty days then there is no fee to the plaintiff."

On appeal, Jayne contends the above findings are inconsistent with the terms and provisions of the referral agreement and the district court's judgment should be reversed.

Our review is unlimited. See *Ekan Properties v. Wilhm*, 262 Kan. 495, 503, 939 P.2d 918 (1997); *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, Syl. ¶ 1, 898 P.2d 1145 (1995).

We begin our analysis by stating general rules of construction applicable when interpreting written contracts. A contract that is plain and unambiguous on its face must be enforced according to its own terms. *Wagnon v. Slawson Exploration Co.*, 255 Kan. 500, 511, 874 P.2d 659 (1994). An ambiguity does not appear until the application of rules of interpretation to the instrument leaves it genuinely uncertain which of two meanings is the proper meaning. *City of Manhattan v. Galbraith*, 24 Kan. App. 2d 327, 332, 945 P.2d 10 (1997). Where the contract is ambiguous or uncertain, intent of the parties is ascertained by considering all language employed, circumstances existing when the agreement was made, the object sought to be obtained, and other circumstances which tend to clarify the intention of the parties. *Universal Motor Fuels, Inc. v. Johnston*, 260 Kan. 58, 63, 917 P.2d 877 (1996). If an ambiguity exists, it is construed against the drafter. *Weber v. Tillman*, 259 Kan. 457, 476, 913 P.2d 84 (1996).

We are unable to accept the district court's interpretation and application of employee fault under paragraph 5 of the referral agreement to include acceptance of a severance package by an employee jilted before reaching the altar. Fault is the breach of a legal or contractual duty. We fail to discern any fault by Keck. The employer made the unilateral decision to terminate Keck. Understandably, the employer offered and Keck accepted a severance package to go quietly into the night. We agree that "fault of the employee" as provided in the referral agreement is unambiguous, but we conclude that the district court's finding that the termination was the fault of Keck is not supported by the evidence.

We also do not agree with the district court's finding that paragraph 5B of the referral agreement precludes recovery by Jayne. Paragraph 5B is structurally subordinate to the general conditions in paragraph 5 and should not be interpreted in isolation. See *City of Manhattan v. Galbraith*, 24 Kan. App. 2d at 332. We believe the district court erroneously interpreted paragraph 5B as a free-standing provision unrelated to the general conditions in paragraph 5. "Termination" can only be interpreted within the context of the entire paragraph requiring that termination must be the fault of the employee, a condition we have already noted was not met.

Jayne has requested an award of attorney fees and court costs. The referral contract states: "Delinquent accounts are subject to paying finance charges, and all collection charges including reasonable attorney fees and court costs." We conclude Jayne should be granted an allowance of $3,150 for attorney fees incurred on appeal and $149.16 for court costs.

The judgment of the district court is reversed; a money judgment is to be granted to Jayne for $14,850 plus interest at the contract rate of 21% per annum from and after September 6, 1994 until paid; judgment is granted to Jayne for attorney fees and costs incurred on appeal totaling $3,299.16; and this case is remanded to the district court for a determination of attorney fees and costs to be awarded Jayne for prosecution of this action before the district court.

MARQUARDT, J., dissenting: I respectfully dissent from the majority's holding.

Key Employment Services (Key) referred a prospect for employment to Kennedy and Coe, L.L.C. (employer). Employer agreed to hire the referred employee; however, before the individual actually began working, employer had a change in circumstances and could no longer use the services of the referred employee. The question before the court was whether employer owed Key the service charge for the referral.

The case was submitted to the district court on stipulated facts. The district court held for employer, finding that the contract of employment was mutually terminated by employer and the referred employee; therefore, no fee was owed to Key. Donald Jayne, Key's successor in interest, appeals.

In the joint stipulation of facts submitted to the district court, the parties agreed that the document entitled "Schedule of Employer Service Charges and Contract Terms —180 Day Guarantee" stated the terms of the agreement between Key and employer. Among other items, it sets forth the schedule of service charges, with examples of service charges. Paragraph 5, entitled "GUARANTEES," states the following:

"Placements are guaranteed under the following circumstances: 1) Termination is the fault of the employee, 2) The account is paid per the invoice terms, and 3) Strict adherence to this entire agreement.

A. Placements are guaranteed for a one hundred and eighty (180) calendar day period after employment commences. Under the conditions of the guarantee the service charge will be .56% of the original service charge for each calendar day of employment.

B. There is no charge when termination occurs within the first thirty (30) calendar days of employment."

The question in this case is the meaning of paragraph 5B.

Key argues that "[b]ecause the employer did not come within the guarantee provisions of the contract the District Court misapplied the facts."

The first issue in interpreting a contract is to determine whether the contract is ambiguous. "Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Holly Energy, Inc. v. Patrick,* 239 Kan. 528, 534, 722 P.2d 1073 (1986). If a contract is not unambiguous, " 'it must be enforced according to its terms so as to give effect to the intention of the parties at the time they entered into the contract, as determined from the instrument itself.' [Citation omitted.]" *City of Manhattan v. Galbraith,* 24 Kan. App. 327, 332, 945 P.2d 10 (1997).

The parties appear to agree that the contract is unambiguous. I agree. "While a court has jurisdiction to interpret and construe a written instrument it has no jurisdiction to reform the instrument by rejecting words of clear and definite meaning and substituting others therefor. [Citation omitted.]" *Geier v. Eagle-Cherokee Coal Mining Co.,* 181 Kan. 567, 572-73, 313 P.2d 731 (1957).

The first four paragraphs of the document, entitled "Schedule of Employer Service Charges and Contract Terms — 180 Day Guarantee," deal with Key's service charge and confidentiality. Only paragraph 5 deals with guarantees. The introductory part of paragraph 5 states that Key guarantees placements under certain circumstances. Key guarantees placements for 180 days. Sub-paragraph A under paragraph 5 states that the service charge is subject to "the conditions of the guarantee," and then gives the schedule for the fee that would be owed. In other words, Key expects only

a portion of the service charge based on the days of employment if the employee is not employed for the 180-day period.

The majority opinion focuses on the district court's finding that there was a mutual dissolution of the employment contract and because of the mutual dissolution, it was deemed "fault." I agree with the majority that there is no support in the record for finding the employee at fault. However, I disagree with the majority that fault is an issue where there is an unconditional guarantee of no service charge when the termination occurs within the first 30 days of employment.

The majority contends that sub-paragraph B is structurally subordinate to the general conditions in paragraph 5. I do not agree. As part of Key's guarantee, sub-paragraph B states: "There is no charge when termination occurs within the first thirty (30) calendar days of employment." There is no statement in sub-paragraph B requiring that the termination is subject to the "conditions of the guarantee" as is stated in sub-paragraph A. Paragraph 5 guarantees that Key will not charge employers a fee if termination occurs within the first 30 days of employment.

The clear and unambiguous meaning of paragraph 5B is that if an employee terminates or is terminated within the first 30 days of employment, there is no charge. The district court's decision should be affirmed, notwithstanding my disagreement on the court's finding of fault.