No. 94,897

IN THE MATTER OF THE ACQUISITION OF PROPERTY BY EMINENT DOMAIN, THE CITY OF ROELAND PARK, KANSAS, A MUNICIPAL CORPORATION, *Plaintiff,* v. JASAN TRUST, *et al., Defendant;* BCB, LLC, *Defendant/Appellant;* and PAYLESS SHOESOURCE, INC., *Defendant/Appellee.*

(132 P.3d 943)

Opinion filed April 28, 2006.

*Sherwin L. Epstein*, of The Law Firm of Sherwin L. Epstein & Associates, of Kansas City, Missouri, argued the cause, and *Marcus G. Abbott*, of the same firm, was with him on the briefs for appellant.

*W. Joseph Hatley*, of Lathrop & Gage, L.C., of Overland Park, argued the cause, and *Melissa Hoag Sherman*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: This appeal involves a dispute between a lessee and its sublessee over the apportionment of a condemnation award. The Jasan Trust was the property fee owner, BCB, L.L.C. (BCB) was the leasehold owner, and Payless Shoesource, Inc. (Payless) was a subtenant of BCB. After court-appointed appraisers determined the just compensation for the undivided fee interest, the district court apportioned that award between the Jasan Trust and BCB. Pursuant to a lease agreement, the court later apportioned BCB's award between BCB and Payless. BCB appeals Payless' award of $502,991 in damages for lost profits. Our jurisdiction is pursuant to K.S.A. 26-504, and we affirm.

## FACTS

The underlying facts are largely undisputed. On May 28, 2004, the City of Roeland Park (City) filed a petition to condemn a retail shopping center for a proposed redevelopment project. The property was located on the northwest corner of Roe Avenue and 50th Street Terrace in Roeland Park, Kansas, and included Parcel 1, the subject of this appeal.

At the time the petition was filed, the Jasan Trust was the fee owner of Parcel 1, BCB was the leasehold owner, and Payless was one of the parties in possession. Payless operated its shoe store in between two "anchor" buildings, a Venture store and a Price Chopper grocery store.

Payless operated pursuant to an Amendment and Restatement of Lease Agreement (Lease Agreement). The Lease Agreement

was originally executed in 1989 between Volume Shoe Corporation (VSC) as Lessee and The May Department Stores Company (May) as Lessor for a primary term of 10 years, expiring in July 1999. VSC later transferred its interest in the lease to Payless, and BCB acquired May's interest. Pursuant to the Lease Agreement, before the condemnation action Payless extended the lease term for a period of 5 years expiring July 31, 2009.

The Lease Agreement included Article 14.00 captioned "Condemnation." In particular, Section 14.03, captioned "Damage Award," states:

"All damages awarded for the taking of said Common Area and Common Area Improvements or the Demised Premises, or any part thereof, shall be payable in the full amount thereof to and the same shall be the property of Landlord, excluding but not limited to any sum paid or payable as compensation for loss of value of the leasehold. Tenant shall be entitled only to that portion of any award expressly stated to have been made to Tenant for *loss of business*, moving expenses, the loss of value and cost of removal of stock, furniture, and fixtures owned by Tenant, and the unamortized value of Tenant's leasehold improvements using the straight-line method of amortization over the primary term of this Lease, to the extent of proceeds received by Landlord." (Emphasis added.)

After the court approved the City's condemnation, it appointed three appraisers. The appraisers later filed a report that awarded $6,500,000 for Parcel 1 but did not express that any portion of the award was designated for lost profits or lost business damages.

In January 2005, the district court held a bifurcated apportionment hearing pursuant to K.S.A. 26-517. The court first apportioned the award for Parcel 1, granting $2,200,000 to the Jasan Trust, and $4,300,000 to BCB. Prior to a hearing to determine what part of BCB's $4,300,000 share was owed to Payless, the parties submitted trial briefs on whether Payless could claim lost profits based on Section 14.03 of the Lease Agreement. In February the district court held that Payless was so entitled, specifically finding that, despite general eminent domain law to the contrary, Section 14.03 was controlling. The court noted that the parties previously stipulated that "loss of business" meant *lost profits*. It also stated in relevant part:

"BCB contends that Payless is only entitled to the value of the unexpired lease term. BCB first argues that Kansas law does not allow for compensation in the form of lost profits. BCB relies upon *Riddle v. State Highway Com.*, 184 Kan. 603, 614-615 (1959), in support of this position. . .

"If there is no contractual agreement between BCB and Payless that specifically addresses the rights of the parties in the event of a condemnation proceeding and award, then it appears clear Payless is not entitled to lost profits. However, as specifically stated by the Supreme Court, this is an 'abstract principle of law.' "

"In this case, there is a written lease agreement that has a specific 'Condemnation Clause' . . . .

"If this clause provides that Payless is entitled to a portion of BCB's award to compensate Payless for lost profits, then this provision is controlling over the above-stated abstract principle of law. [Citations omitted.]

"It appears the issue boils down to contract interpretation. The above-referenced clause states that all damages awarded shall be the property of BCB, excluding, but not limited to, any sum paid or payable as compensation for loss of value of the leasehold. This phrase clearly indicates that the parties agreed that there are damages that could be apportioned to Payless other than just the loss of value of the leasehold. The next sentence gives examples of such other damages. Such an example is 'loss of business'. It is important to note here, that at the hearing on this issue, the parties stipulated that for purposes of interpreting this clause, 'loss of business' means lost profits.

. . . .

"In conclusion, the Court finds that under the lease agreement, Payless is entitled to seek a share of BCB's condemnation award for compensation for lost [profits]."

At the later evidentiary hearing, Darren Haddock, the Director of Store Development West for Payless, testified that Payless sustained $502,991 in lost profits as a result of the taking. BCB did not present expert testimony or evidence to contradict Haddock's opinion.

On July 1, 2005, the district court entered its journal entry of judgment. It apportioned $502,991 of BCB's Award to Payless for "damages in the form of lost profits recoverable under the parties' Lease Agreement." BCB timely appealed to the Court of Appeals and 2 days later appealed to the Supreme Court pursuant to K.S.A. 26-504.

## ANALYSIS

Issue: *Did the district court err in determining that Payless was*

*entitled to payment for lost profits out of the condemnation proceeds paid to BCB?*

Our standard of review is de novo. See *City of Wichita v. Meyer*, 262 Kan. 534, 539, 939 P.2d 926 (1997) (interpretation of Eminent Domain Procedure Act); *McGinley v. Bank of America, N.A.*, 279 Kan. 426,431,109 P.3d 1146 (2005) (interpretation and legal effect of a written instrument are questions of law).

### Eminent Domain Generally

"The Fifth Amendment of the U.S. Constitution provides that private property shall not be taken for public use without just compensation. Compensation is in the form of indemnity and the general rule is that an owner is to be put in as good a position as he would have occupied if his property had not been taken." 8A Nichols on Eminent Domain § 16.01[1] (3d ed. 2005).

A condemnation proceeding in Kansas is governed by the Kansas Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.* (the Act). The Act provides for bifurcated proceedings in determining compensation. First, appraisers determine the amount of the award. "Under the 'undivided fee rule' followed in Kansas, the total award for the condemned property is determined in the first proceeding, without consideration of the competing demands of the various holders of interests in the land." *City of Overland Park v. Dale F. Jenkins Revocable Trust*, 263 Kan. 470, 472, 949 P.2d 1115 (1997). Thereafter, the parties in interest divide the award among themselves. However, "if various parties in interest cannot agree among themselves as to the division of that award, the court allocates the award pursuant to K.S.A. 26-517. [Citation omitted.]" 263 Kan. at 472.

In its trial brief, BCB had acknowledged that the Lease Agreement contained a condemnation clause, Article 14.00, which "governs the subsequent apportionment of BCB's interest as between BCB and Payless." Nevertheless, BCB maintained that Payless was only entitled to the fair market value of its unexpired leasehold interest. BCB provided alternative theories for relief: (1) regardless of a condemnation clause to the contrary, lost profits are never recoverable in Kansas condemnation actions; and (2) even if lost profits are recoverable, the appraisers' award did not expressly des-

ignate a portion of the award for such loss as required under Section 14.03.

After losing on both issues at the district court level, BCB again argues that lost profits do not constitute real property damages. In the alternative, it alleges that lost profits are only allowable if they are intrinsically related to the land. BCB fails to raise, however, its previous argument that the appraisers must designate a portion of the award for loss of profits in order for them to be recoverable. That issue is therefore deemed abandoned. See *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005). Instead, BCB asserts for the first time that the district court had no jurisdiction to award Payless damages for lost profits. Jurisdiction may be raised for the first time on appeal. See *Mid-Continent Specialists, Inc., v. Capital Homes, L.C.*, 279 Kan. 178, Syl. ¶ 2, 106 P.3d 483 (2005).

Payless responds that Section 14.03 governs the disposition of the award. It argues that under that section's unambiguous language, it was entitled to lost profits.

*Lost profits*

The core issue of the parties' controversy is simple: In determining whether lost profits are allowable in a condemnation action, does a specific clause in a lease agreement or the general law control?

BCB approaches the question by arguing general condemnation law. Among other things, it discusses K.S.A. 26-513. The statute outlines the numerous factors used in determining the amount of the condemnation award; BCB points out that "lost profits" are not listed. BCB also cites cases dating back to 1914 for the proposition that only the value of the unexpired lease, and not the profits of the business or the inconvenience of moving the business, are compensable in a condemnation case. See *Bales v. Railroad Co.*, 92 Kan. 771, 775, 141 Pac. 1009 (1914) (collecting cases from other jurisdictions stating the same rule); see also *Riddle v. State Highway Commission of Kansas*, 184 Kan. 603, 614, 339 P.2d 301 (1959) (stating that the general rule is an "abstract principle of law"). BCB notes that an exception to the general rule exists for

profits that are intrinsically related to the land but argues that as a shoe store, Payless does not meet the exception's criteria.

Instead of controverting BCB's recitation of Kansas common law regarding the general rule, Payless observes: "Ordinarily, the court turns to the lease for guidance on allocating the award." *City of Topeka v. Estate of Mays*, 245 Kan. 546, 549, 781 P.2d 721 (1989). It notes that Kansas courts have long held that a lease provision governing the rights of the parties is controlling on the general issue of compensation: " ' "[I]f the lease itself includes a provision in respect of the rights of the parties in the event of the condemnation of the leased premises, such a provision is controlling, if applicable to the particular case." ' " *City of Manhattan v. Galbraith*, 24 Kan. App. 2d 327, 330, 945 P.2d 10 (1997) (citing *State Highway Commission v. Safeway Stores*, 170 Kan. 413, 418, 226 P.2d 850 [1951], *judgment set aside on other grounds on reh.* 170 Kan. 545, 228 P.2d 208 [1951] [quoting 18 Am. Jur., Eminent Domain § 232, p. 866]); see *Phillips Petroleum Co. v. Bradley*, 205 Kan. 242, 244-45, 468 P.2d 95 (1970). As we stated in the condemnation case of *Bradley*, 205 Kan. at 245, "[t]he right of the lessee to compensation, as any other right, may be waived or contracted away by the terms of the lease."

The *Galbraith* court applied this rule to hold that, despite the general principle that under Kansas law a tenant is entitled to compensation if its leasehold interest is damaged by the exercise of eminent domain, the tenant waived this right by the specific terms of its written agreement with the landlord. 24 Kan. App. 2d at 333.

The rule articulated in *Galbraith* is consistent with eminent domain law in other jurisdictions pertaining to lease agreements. As the Hawaii Supreme Court concluded in *City & County v. Market Place, Ltd.*, 55 Hawaii 226, 234, 517 P.2d 7 (1973):

"Where a landlord and tenant have contractually agreed as to the disposition of compensation in the event of condemnation, such an agreement is generally held binding. *Territory v. Arneson*, 44 Haw. 343, 354 P.2d 981 (1960). This rule acknowledges that the allocation of risks in such circumstances is a matter to which the parties are free to bargain. If DHS [tenant] is entitled to no part of the award of the fair market value of the subject property by virtue of the condemnation clause in the lease, *such a result can only be viewed as a consequence of its choice to assent to the clause in the first instance*." (Emphasis added.)

See, *e.g.*, *Pennsylvania Av. Dev. v. One Parcel of Land, Etc.*, 670 F.2d 289, 292 (1981) ("If there is a prior agreement between the parties as to allocation of a condemnation award, that agreement, of course, governs the disposition of the award."); *City of Kansas City v. Manfield*, 926 S.W.2d 51, 53 (Mo. App. 1996) ("Missouri law provides that specific provisions in a lease spelling out the respective rights of the parties to that lease are valid and controlling in the event the property is condemned."); *Musser v. Bank of America*, 114 Nev. 945, 949, 964 P.2d 51 (1998) ("If there exists a prior agreement between a landlord and tenant as to allocation of condemnation proceeds, that agreement governs the disposition of those proceeds."). See also Annot., *Validity, Construction, and Effect of Statute or Lease Provision Expressly Governing Rights and Compensation of Lessee upon Condemnation of Leased Property*, 22 A.L.R. 5th 327, § 3 (generally upholding the validity of a lease provision expressly governing the rights and compensation of the lessee); 18 Am. Jur. Eminent Domain § 236; and 4 Nichols on Eminent Domain § 13.08 (3d ed. 2005) (It is also generally held that prior agreement between a lessor and lessee as to the allocation of a condemnation award will govern the disposition of the award.).

In addition, courts in other jurisdictions have specifically held that parties to a lease may contract outside of general eminent domain law. See *City of Vista v. Fielder*, 13 Cal. 4th 612, 618, 919 P.2d 151, 54 Cal. Rptr. 2d 861 (1996) ("The Eminent Domain Law itself declares the generally applicable rules . . . . These rules may indeed be displaced by a provision of a lease to the contrary."); *United States v. 1.377 Acres of Lands*, 352 F.3d 1259, 1269 (9th Cir. 2003) (citing *City of Vista* for the rule that "parties are free to contract around eminent domain rules").

Although these cited cases stand for the general rule that a specific lease agreement controls the allocation of condemnation awards, none deals specifically with a provision concerning loss of profits or other business damages. A case cited by BCB, *In re Marriage of Watkins*, No. 63,582, unpublished opinion filed January 19, 1990, deals with such a provision. If *Watkins* supports any party's position, however, it is Payless', not BCB's.

In *Watkins*, a couple divorced while their business property was involved in a Kansas Department of Transportation eminent domain proceeding. Their property settlement agreement provided that the wife would receive 50% of all proceeds paid by KDOT as the condemnor, but she would not be entitled to share in proceeds for property damages directly related to loss of future business or loss of capacity for business. In ruling against the husband's claim that a portion of the condemnation proceeds were for business loss and therefore not to be shared with his wife, the Court of Appeals stated:

> "As conceded by [husband] in his brief, loss of business and loss of future business are not compensable under Kansas law as separate items of damage in condemnation cases. See K.S.A. 26-513. *Riddle v. State Highway Commission*, 184 Kan. 603, 614, 339 P.2d 301 (1959). [Husband] *argues that Kansas law does not prevent the parties from agreeing to distribute the payment among themselves based on separate items of damages. Although that may be true*, we agree with the trial court and find a failure of proof by respondent. Respondent failed to prove that any of the $38,000 KDOT payment was for loss of business or loss of future business." (Emphasis added.) *In re Marriage of Watkins*, Slip op. at 5.

Clearly, the Court of Appeals did not reject the concept that the parties were free to contract for allocating damage proceeds for business losses. Rather, it rejected the husband's argument because he failed to prove that he *had* a loss of business. In the present case, however, Payless proved it had suffered lost profits through expert testimony. *Cf. Wayne Co., Inc. v. Newo, Inc.*, 75 N.J. Super. 100, 108, 182 A.2d 369 (1962) ("[I]f defendant wished to avail itself of a different measure of damages—and therefore a larger share of the $160,000—it could have provided specifically in the lease that in case of condemnation it would be entitled to claim damages for its loss of business, profits, fixtures and good will from the condemnation award.").

Under general condemnation law, BCB would prevail. However, pursuant to the above cited authorities, parties are free to contract around eminent domain rules. Section 14.03 is simply a negotiated agreement for dividing BCB's condemnation award with Payless. The Lease Agreement's language is clear and should be enforced

as agreed upon. Therefore, we conclude that the district court correctly apportioned BCB's award to cover Payless' lost profits.

*Jurisdiction*

BCB also claims that a district court conducting an apportionment hearing in a condemnation case has no jurisdiction to make an award for anything other than one for the fair market value of the real property interest condemned; damages for lost business and profits are excluded. Perhaps more specifically, it claims that "[e]ven . . . where a private contract or lease is at issue, the district court must follow the [Eminent Domain Procedure] Act and may not deviate therefrom." As a result, according to BCB, the "claim for lost profits is totally unrelated to just compensation for fair market value and such a claim by Payless must be brought in a lawsuit separate and apart from this eminent domain action." We reject BCB's arguments.

As discussed previously, K.S.A. 26-517, a part of the Eminent Domain Procedure Act, expressly authorizes the court to resolve a dispute among parties as to apportionment of the award. It states:

"In any action involving the condemnation of real property in which there is a dispute among the parties in interest as to the division of the amount of the appraisers' award or the amount of the final judgment, *the district court shall,* upon motion by any such party in interest, *determine the final distribution of the amount of the appraiser's award* or the amount of the final judgment." (Emphasis added.)

We have held that "if various parties in interest cannot agree among themselves as to the division of that [appraisers' award], the court allocates the award pursuant to K.S.A. 26-517." *City of Overland Park v. Dale F. Jenkins Revocable Trust,* 263 Kan. at 472. Based upon the clear language of the statute and our interpretive case law, we conclude the district court had jurisdiction in the present proceeding to apportion the award in accordance with Section 14.03. To hold otherwise, as BCB argues, would require Payless to file a separate proceeding based upon contract.

We have thoroughly reviewed other arguments by BCB and conclude they have no merit.

Affirmed.